Argued and submitted May 5, decision of the Court of Appeals reversed, judgment of
the circuit court reversed and case remanded to that court for a new trial
August 30, 1988

# STATE OF OREGON,
*Petitioner on Review,*

*v.*

# RICK WOODLEY,
*Respondent on Review.*

## (TC 86-173-CR; CA A41196; SC S34898)

760 P2d 884

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Donald D. Diment, Jr., Diment, Billings & Walker, Eugene, argued the cause for respondent on review.

LINDE, J.

## LINDE, J.

Oregon's Criminal Code makes it a crime to subject another person to unconsented sexual contact, ORS 163.415, and it defines "sexual contact" as

> "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

ORS 163.305(6). Defendant was indicted for "touching the thigh area and between [the victim's] breasts" without her consent. He was convicted of attempted sexual abuse. On appeal, he argued that the indictment did not charge a crime and that the court erred in instructing the jury. The Court of Appeals reversed the conviction on the first of these grounds, *State v. Woodley,* 88 Or App 493, 746 P2d 227 (1987), and we allowed the state's petition for review. Because we reverse the conviction only on the second ground, the jury instruction, we remand the case to the circuit court for a new trial.

The Court of Appeals has wrestled with ORS 163.305(6) in several cases. *State v. Turner,* 33 Or App 157, 575 P2d 1007, *rev den* 282 Or 537 (1978), *State v. Buller,* 31 Or App 889, 571 P2d 1263 (1977), *State v. Pagel,* 16 Or App 412, 518 P2d 1037, *rev den, cert den* 419 US 867 (1974). The difficulty is how the phrase "intimate parts" should be applied. To meet the constitutional argument that the term is too vague and susceptible to divergent applications by factfinders, the Court of Appeals settled on treating the identification of "intimate areas" as a question of law. The court held that they did not include the "thigh area" and "between the breasts" and, therefore, that the indictment did not charge a crime. 88 Or App at 500.

In protecting "intimate areas" of the human body, the statute invokes individual and cultural standards, and perhaps also the social psychology of group decision by a jury asked to agree on what is "intimate" while reacting to the circumstances of one case. No area of the anatomy is intrinsically intimate, for instance, to an X-ray camera. The question is whose sense of intimacy matters. Is the perception that of the person touched, of the person who touches, of a third

person such as a parent or bystander? Is it that of the legislature, of some identifiable community, or of the factfinder at trial?

The question is not new. It arises whenever the meaning of a legal standard is made to depend on personal reactions or social assumptions. The answers differ with the laws at issue. In determining whether a law created a "crime" for constitutional purposes, we held that the "punitive significance" of the law might be viewed through the eyes of defendants or the general public and, in the law at issue, had been decided by the legislature itself. *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977). When statutes assigned such standards as "immorality" and "unprofessional conduct" to administrative agencies, we held that the legislature delegated responsibility for refining those standards to the agencies. *Ross v. Springfield School Dist. No. 19,* 300 Or 507, 716 P2d 724 (1986); *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980). In tort law, juries may decide whether one person's intentional infliction of psychic distress on another exceeds "the farthest reaches of socially tolerable behavior," *Hall v. The May Dept. Stores,* 292 Or 131, 137, 637 P2d 126 (1981), but not whether truthful disclosure about another is "private" rather than "newsworthy," *Anderson v. Fisher Broadcasting Co.,* 300 Or 452, 712 P2d 803 (1986). "What is 'private' so as to make its publication offensive likely differs among communities, between generations, and among ethnic, religious or other social groups, as well as among individuals." 300 Or at 461. The same can be said about what is "intimate."

■     Here, guidance appears in ORS 163.305(6) itself and in explanatory comments. "Intimate parts" are more than "sexual parts," but in context the words refer to parts that evoke the offensiveness of unwanted sexual intimacy, not offensive touch generally. That does not go far toward solving the problem of subjective or cultural differences, which attach varying meanings to such common social customs as hugging, kissing, holding hands, or linking arms among members of the same sex or of opposite sexes, not to mention unusual or idiosyncratic sexual tastes or inhibitions. Are lips intimate parts? Are knees or feet intimate, hands or elbows not? To hold that these are or are not intimate parts as a matter of law assumes that the lawmakers had in mind a chart or catalogue

of "intimate" parts of the human body, which they did not list in the law but expect courts to divine from the word itself. Thus the statute also would fix this chart at the time of enactment, so that if, for instance, skirts at that time had never risen above the ankle, not only the "thigh area" but the shin would be intimate as a matter of law in the age of the miniskirt and the bikini. Sometimes statutes do that kind of thing, but it did not happen here.

In explaining its draft for the crimes of sexual abuse, now ORS 163.415 and ORS 163.425, the Criminal Law Revision Commission wrote that it meant "other intimate parts" to include "genitalia, breasts and whatever anatomical areas the trier of fact deems 'intimate' in the particular cases which arise. Thus, the ultimate decision of 'intimate' parts (sic) is left to the community sense of decency, propriety and morality." Proposed Criminal Procedure Code, Final Draft and Report (July 1970), Commentary to § 116.

We generally assume in the absence of other legislative history that the Legislative Assembly accepted the commission's explanations, *see Stelts v. State of Oregon,* 299 Or 252, 258, 701 P2d 1047 (1985), and *State v. Garcia,* 288 Or 413, 420, 605 P2d 671 (1980), but summary comments like the foregoing often are so brief as to obscure rather than enlighten thought. Analytically, one would assume that "genitalia" would be "sexual parts" without depending on the added word "intimate." The commentary identifies "breasts" as "intimate parts" without referring that question to a trier of fact or to community opinion. For all other parts of the body, the two-sentence commentary refers first to factfinding in "particular cases," which suggests that what is intimate can vary from case to case, and then to a "community sense of decency, propriety and morality," a phrase that assumes some continuity beyond the reactions of a one-time jury. Taken literally, the first idea would let each factfinder define "intimate parts," and the second would face all the problems of determining "community" judgment as a disputable fact to be established beyond a reasonable doubt. *See Ross v. Springfield School Dist. No. 19, supra,* 300 Or at 512-15.

Thus we can appreciate why the Court of Appeals, to save the statute from incoherence, turned to deciding for itself whether parts of the body are or are not "intimate" as a matter

of law. Whatever the commission and the legislature meant to do, however, they clearly decided not to do that. The commentary may not explain much, but it unmistakably explains that the statutes do not enact a chart or list of "intimate parts" beyond "breasts." We think the legislature's apparent goal can be achieved in another way besides unguided jury discretion or a search for the sense of some unspecified "community."

■   First, because the object of the statute is to protect persons from unwanted intimacies, the part must be regarded as "intimate" by the person touched. This is a subjective test.

■■   Second, if an accused touched this part knowing that the touched person regarded it as intimate and did not consent, the accused violates the statute if the requisite sexual purpose is proved. If the accused, regardless of his or her private purpose, did not know that the part was "intimate" to the person touched, the state must prove beyond a reasonable doubt that the accused should have recognized it to be an "intimate part." The latter is an objective test.

■   In other words, the part must be subjectively intimate to the person touched, and either known by the accused to be so or to be an area of the anatomy that would be objectively known to be intimate by any reasonable person. A court may decide that no reasonable jury could find a particular part of the body to be objectively "intimate," but the court may not, in a criminal case, instruct the jury that any part is objectively "intimate," other than breasts.

■   This view of the statute does not eliminate all potential for divergent decisions; on the other hand, it allows for individual, cultural, or generational differences in what areas are deemed intimate. It is important not to confuse a person's objection to the touch as such with the question whether the part touched was "intimate." An accused would not commit sexual abuse (though perhaps some other offense) by touching a part that a reasonable person would not expect to be intimate, although the person touched so regarded it, unless this fact was known to the accused. When the statute is focused on the understanding of each of the two persons concerned, not on the factfinder's estimation of undifferentiated social standards, it survives the test of vagueness.

In this case, the trial court instructed the jury:

"Intimate parts of a person includes genitalia, breasts, and whatever anatomical areas the jury deems intimate under the community sense of decency, propriety and morality."

This instruction did not meet the foregoing test. The conviction therefore must be reversed. The indictment, however, suffices to present the issue whether defendant touched an area that the person he touched subjectively considered intimate and that defendant knew this or should have recognized the area to be one that would objectively be known to be an intimate part by any reasonable person. The indictment therefore should not be dismissed.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed and the case is remanded to that court for a new trial.