Argued and submitted October 20, 2005, affirmed February 15, petition for
review denied May 23, 2006 (340 Or 673)

## STATE OF OREGON,
*Respondent,*

*v.*

## NICHOLAS PAUL MEYROVICH,
*Appellant.*

### 03C52549; A124680

129 P3d 729

Andy Simrin argued the cause and filed the brief for appellant.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Linder* and Schuman, Judges.

SCHUMAN, J.

---

* Linder, J., *vice* Ceniceros, S. J.

## SCHUMAN, J.

Defendant was convicted of burglary in the first degree, ORS 164.225, and sexual abuse in the first degree, ORS 163.427, stemming from an incident in which he gained access to the victim's dwelling and then forcibly kissed her on the neck. He received a sentence of 90 months for the burglary, and, because he had been convicted of at least two prior felony sex crimes, he received a life sentence on the sexual abuse conviction. ORS 137.719(1). On appeal, he argues that (1) the trial court should have granted his motion for a judgment of acquittal on the sexual abuse charge because an element of that crime is touching a person's "intimate part," and a neck is not "intimate"; (2) the court should not have imposed an upward departure sentence on the burglary conviction because the departure was based on a fact not proved to a jury or admitted by defendant; and (3) the court should not have imposed a life sentence on the sexual abuse charge because that punishment violated the Oregon constitutional prohibition against cruel, unusual, or disproportionate punishment.[1] We affirm.

■ We review the denial of a motion for a judgment of acquittal "solely to determine whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Our decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for the jury to so find." *State v. Rose*, 311 Or 274, 281, 810 P2d 839 (1991). The facts, under that standard, are as follows.

Defendant was working as an inspector and salesman for a household pest extermination company when Mecham, a neighbor of the victim, called for a moth inspection. When defendant came to Mecham's residence to perform the inspection, the victim agreed to allow defendant to inspect her home as well. During that inspection, defendant asked the victim a number of questions that she regarded as

---

[1] Although defendant mentions the Eighth Amendment to the United States Constitution in his assignment of error, his argument focuses entirely on the state constitution.

personal, including whether she was married or had children. The victim thought that defendant was "creepy" and felt uncomfortable with his questions. Defendant also asked the victim if she would like to go on a date with him, and she told him no.

At the conclusion of the inspection, defendant wrote his cell phone number on a business card and gave it to the victim along with some paperwork. He then abruptly grabbed her, kissed her, and "shoved his tongue down [her] throat." The victim pushed defendant away and told him, "I don't do this. I don't even know you." Defendant said, "Why not? Try it. You might like it." He then took the victim around the waist and began "sucking on [her] neck." The victim could feel that defendant had an erection. She pushed him away again.

At that point, Mecham arrived at the victim's residence, and, as she entered the doorway, she saw defendant with his arms around the victim. Defendant was trying to kiss the victim and the victim was trying to push him away. Defendant immediately picked up his things and left. He was subsequently indicted for one count each of burglary in the first degree and sexual abuse in the first degree. The indictment on the sexual abuse count alleges that defendant "did unlawfully and knowingly, by means of forcible compulsion, subject [the victim] to sexual contact by touching her neck, a sexual or intimate part of [the victim]."[2]

At the close of the evidence, defendant moved for a judgment of acquittal on both charges. The court denied those motions, and the jury returned a verdict of guilty on both counts. On the sexual abuse conviction, the trial court imposed the presumptive sentence of life in prison. On the burglary conviction, the trial court imposed an upward departure sentence based on the finding that defendant did not appear to be amenable to rehabilitation. The court ordered the sentences to be served concurrently. This appeal followed.

---

[2] The record does not disclose why defendant was not indicted for forcibly kissing the victim or for causing her to contact his erection.

The elements of sexual abuse in the first degree are set forth in ORS 163.427:

> "(1)  A person commits the crime of sexual abuse in the first degree when that person:
>
> "(a)  Subjects another person to sexual contact and:
>
> "* * * * *
>
> "(B)  The victim is subjected to forcible compulsion by the actor[.]"

"Sexual contact" is defined as

> "any touching of the sexual or *other intimate parts* of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

ORS 163.305(6) (emphasis added). Defendant does not contest the court's implicit finding that he used "forcible compulsion" or that his purpose was to arouse or gratify his sexual desire. The only question presented in defendant's first assignment of error, therefore, is whether the victim's neck qualifies as an "intimate part" so as to establish the element of "sexual contact."

In analyzing that question, we take guidance from *State v. Woodley*, 306 Or 458, 760 P2d 884 (1988). In that case, to save the statute from fatal vagueness, the court devised a two-step analysis for determining whether, in any particular situation, a body part is to be regarded as "intimate":

> "First, because the object of the statute is to protect persons from unwanted intimacies, the part must be regarded as 'intimate' by the person touched. This is a subjective test.
>
> "Second, if an accused touched this part knowing that the touched person regarded it as intimate and did not consent, the accused violates the statute if the requisite sexual purpose is proved. If the accused, regardless of his or her private purpose, did not know that the part was 'intimate' to the person touched, the state must prove beyond a reasonable doubt that the accused should have recognized it to be an 'intimate part.' The latter is an objective test.

> "In other words, the part must be subjectively intimate to the person touched, and either known by the accused to be so or to be an area of the anatomy that would be objectively known to be intimate by any reasonable person. A court may decide that no reasonable jury could find a particular part of the body to be objectively 'intimate,' but the court may not, in a criminal case, instruct the jury that any part is objectively 'intimate[.]'

> "This view of the statute does not eliminate all potential for divergent decisions; on the other hand, it allows for individual, cultural, or generational differences in what areas are deemed intimate."

*Id.* at 463. In the present case, undisputed evidence supports the conclusion that the subjective element of the test was met; the victim testified that she regarded defendant's actions in putting his mouth on her neck as touching an intimate part. The question therefore resolves to whether defendant knew or should have known that she regarded her neck as an intimate part in the circumstances. The court properly instructed the jury, telling them,

> "In order to find that a body part is intimate, you must find beyond a reasonable doubt that [the victim] regarded the part touched as intimate and either: One, the defendant knew that [the victim] regarded that part as intimate; or two, any reasonable person would know that the part touched is intimate."

The jury returned a verdict of guilty. We must accept that finding unless we "decide that no reasonable jury could find a particular part of the body [here, the neck] to be objectively 'intimate.' " *Id.* at 463.

■      To resolve that question, in turn, we must define "intimate." *Woodley* is not particularly helpful in that task; it tells us only that

> " '[i]ntimate parts' are more than 'sexual parts,' but in context the words refer to parts that evoke the offensiveness of unwanted sexual intimacy, not offensive touch generally."

*Id.* at 461. As used in the phrase "intimate parts of a person," that is, as used to describe body parts, the term is anomalous.

We can easily understand the import of "intimate" in the sentence, "I have an intimate friend," or "We have an intimate relationship." Likewise, we would comprehend what a person means by saying that he or she has "an intimate knowledge of Russian literature." We would not be puzzled to hear somebody describe a restaurant or other setting as "intimate." On the other hand, we would not ordinarily say or comprehend the statement, "I have an intimate neck." Taking what guidance we can from *Woodley*, from the dictionary, and from the context in which the term appears, we conclude that, when the legislature used the term "intimate part[ ]" in ORS 163.305(6), it intended to mean a body part that the person ordinarily allows to be touched only by other people with whom the person has an intimate relationship, that is, a "very close personal relationship[ ]" marked by "love, * * * ardent liking, * * * or mutual cherishing[.]"[3]

■     Based on that definition, we conclude that a reasonable jury could find beyond a doubt that, when defendant put his mouth on the victim's neck, he knew or should have known that she considered it, under the circumstances, to be an "intimate" part. In ordinary social intercourse, one adult does not touch the neck of another adult outside of intimate relationships, at least not without some unusual but reasonable justification (for example, to fold down an accidently turned-up collar or brush off an insect). More to the point, immediately before defendant touched the victim's neck, she had told him that she was not interested in dating him, and she had pushed him away when he forcibly embraced her. When Mecham entered the victim's residence, she immediately recognized that the victim was attempting to reject defendant. These facts demonstrate that a reasonable person in defendant's position should have known that she would regard his touching her neck to be touching an intimate part. The court did not err in denying defendant's motion for a judgment of acquittal.

---

[3] The relevant definitions of "intimate" in *Webster's Third New Int'l Dictionary* 1184 (unabridged ed 2002) are: "marked by or appropriate to very close personal relationships : marked by or befitting a relationship of love, warm or ardent liking, deep friendship, or mutual cherishing[.]"

We turn to defendant's argument that a life sentence for committing sexual abuse in the first degree violates Article I, section 16, the state prohibition against cruel, unusual, or disproportionate punishment.[4] Defendant was sentenced pursuant to ORS 137.719, which provides, in part:

> "(1)   The presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence.

> "(2)   The court may impose a sentence other than the presumptive sentence provided by subsection (1) of this section if the court imposes a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons."

Defendant contends that the life sentence in this case is unconstitutionally disproportionate because his conviction was based on a mere forcible kiss on the neck as opposed to a more violent or egregious offense, and the sentence is more onerous than what he would have received if he had committed murder (a sentence for murder, he argues, would at least have allowed for parole after a minimum incarceration term).

■■   Although there appears to be some disagreement as to the precise test to use in determining whether a sentence violates Article I, section 16, and whether the same test applies to both the "cruel and unusual" clause and the proportionality clause, *see State v. Thorp*, 166 Or App 564, 2 P3d 903 (2000), *rev dismissed*, 332 Or 559 (2001), the irreducible core of our analysis is this: a sentence violates the proportionality requirement of Article I, section 16, only if it "is so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper." *State v. Isom*, 313 Or 391, 401, 837 P2d 491 (1992). Further, Oregon courts recognize that determining sentences is a legislative function that should be subjected to an extremely deferential level of judicial review, and, for that reason, "successful challenges based on constitutional proportionality have been

---

[4] Article I, section 16, of the Oregon Constitution provides, in part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

exceedingly rare in Oregon." *Thorp*, 166 Or App at 572. Under those standards, we reject defendant's argument.

■■ Defendant's focus on the assertedly innocuous conduct at issue in this case misses the point—even if we were to agree with his characterization. The statute under which defendant was sentenced emphasizes not the gravity of any particular offense, beyond the fact that it is a felony; rather, it emphasizes the fact that the offender is a habitual sex criminal. Oregon courts have long recognized the validity of statutes that provide enhanced penalties based on the repetitive nature of the offense. *See, e.g., Tuel v. Gladden*, 234 Or 1, 6, 379 P2d 553 (1963) ("Habitual criminal acts are based upon the belief that the criminal, as well as the crime, is a material factor to be considered in fixing the sentence."). The defendant in the present case, as the trial court noted, is a "poster child" for this type of legislation. At the time of sentencing, he had been convicted of *nine* prior sex offenses, some of which involved the use of force. According to the presentence report, in several of them the victim was a minor, and many involved the use of deadly weapons. Further, he never acknowledged culpability for his actions in the present case. All things considered, we cannot say that sentencing defendant to life in prison shocks the moral sense of all reasonable people. We therefore reject his second assignment of error.

Finally, defendant argues that the trial court erred in imposing an enhanced sentence on the burglary conviction based on facts not found by a jury or admitted by defendant, contrary to the requirement announced in *Apprendi v. New Jersey*, 530 US 466, 499, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). Defendant acknowledges that he did not preserve this claim of error at the trial court, but contends that the error is apparent on the face of the record, and we should exercise our discretion to review it. ORAP 5.45(1). We agree that the error is plain. *State v. Perez*, 196 Or App 364, 102 P3d 705 (2004), *rev allowed*, 338 Or 488 (2005). However, the burglary sentence is concurrent to the life sentence that we affirm. The error, therefore, lacks sufficient gravity to warrant exercise of our discretion to reach it.

*See State v. Gutierrez*, 197 Or App 496, 106 P3d 670, *adh'd to as modified on recons*, 199 Or App 521, 112 P3d 433 (2005).

Affirmed.