Argued and submitted September 7, on appeal, sentence vacated and remanded for
resentencing; otherwise affirmed; on cross-appeal, affirmed December 26, 2007,
petition for review allowed May 7, 2008 (344 Or 539)

STATE OF OREGON,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

DARRYL ANTHONY BUCK,
*Defendant-Respondent*
*Cross-Appellant.*

Linn County Circuit Court
04102314; A131973

174 P3d 1106

Robert M. Atkinson, Assistant Attorney General, argued the cause for appellant - cross-respondent. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Jamesa J. Drake, Deputy Public Defender, argued the cause for respondent - cross-appellant. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ROSENBLUM, J.

## ROSENBLUM, J.

Following a bench trial, the trial court convicted defendant of one count of sexual abuse in the first degree, ORS 163.427, a Measure 11 offense, *see* ORS 137.700(2)(a)(P). However, the court concluded that, under the circumstances, the 75-month sentence prescribed by Measure 11 would be so disproportionate to the offense that it would violate Article I, section 16, of the Oregon Constitution. Accordingly, the court imposed a sentence of 17 months. On appeal, the state assigns error to the trial court's refusal to impose the Measure 11 sentence. Defendant cross-appeals, arguing that there was insufficient evidence of sexual contact to support a conviction. We reject defendant's arguments on cross-appeal without discussion. On the state's appeal, we conclude that the trial court erred in failing to impose the Measure 11 sentence.

We take the following facts from the trial court record.[1] At the time of the offense for which defendant was convicted, he and the victim had been acquainted for several months. Defendant was 36 years old; the victim was 13. Defendant and the victim's mother had a mutual friend, Schamp, who sometimes took the victim and her sister, T, who was 15, out for various recreational activities. Defendant had met the girls on several occasions and had told them both that he thought they were beautiful and smart. T described defendant's remarks as "things that you'd tell your girlfriend to flatter her." Defendant knew how old the victim was, but

---

[1] The parties disagree as to the standard by which we are to resolve conflicts in the record as to what actually occurred. The state argues that, because the trial court convicted defendant without expressly making extensive factual findings, we must view the record in the light most favorable to the state. Defendant responds that that standard applies on review of a denial of a motion for judgment of acquittal but not on review of the trial court's sentencing decision. In his view, because the trial court ruled in his favor on the sentencing issue, we must resolve any conflicts in the evidence in his favor.

We need not resolve the parties' dispute. Although the trial court did not make extensive factual findings in rendering its verdict, at defendant's sentencing hearing, the court stated the facts that it had found pertaining to the elements of defendant's offense (which we set out in detail below). Those findings, by which we are bound, resolve at least some of the evidentiary conflicts. To the extent that other conflicts remain, they are not dispositive. That is, even assuming that the trial court resolved the remaining factual conflicts in defendant's favor, we nevertheless conclude the court erred in refusing to impose the Measure 11 sentence.

he thought that she was an "early bloomer" and that she looked to be 20 or 30 years old.

In July 2004, Schamp and defendant went to Schamp's family reunion at a campground near Sweet Home. On the way, Schamp decided to stop at the victim's house to see if he and defendant could take the girls along for a camping trip. Schamp persuaded their mother to allow the girls to go. She asked Schamp and defendant to "keep an eye on [the girls]" while they were camping.

About an hour after they arrived at the campsite, all four walked to the nearby river to swim and fish. After several hours, Schamp and T left the river to collect firewood. Defendant was going to go with them, but Schamp told him that he and the victim, who was still fishing, could stay at the river and that Schamp and T would take care of the firewood.

Where the victim was fishing, the river bank consisted of steep rock walls. The victim sat on the rock wall about seven feet above the water with her lower legs dangling over the edge. She sat leaning forward so she could see the water. Defendant sat down next to her on her left side. The part of the rock that he was sitting on sloped down toward the river and to the left. To keep himself from sliding, defendant put his hands on the rock at his sides, propping himself up. His right hand was on the rock directly behind the victim. He told her again that he thought she was beautiful.

When the victim leaned back to cast her fishing line, the top part of her buttocks came into contact with the back of defendant's hand. The first time it happened, he immediately moved his hand away, but, because the victim did not flinch or react in a way that suggested that she was uncomfortable with the contact, he put his hand back where it was and allowed the contact to occur one or two more times as the victim continued to cast.

While that was occurring, defendant slid down the rock a bit. To move himself back to where he was, he put his right hand on the victim's lower back and pushed himself up, using her body for leverage. Defendant asked the victim whether he had made her uncomfortable by touching her.

She said that he had and told him that he needed to know what his limits were. He said that he did, apologized, and told her, "I have nothing but love and affection for you." When the victim got up to leave, there was dirt on the back of her shorts. Defendant brushed the dirt off with two swipes of the palm of his hand. The victim walked away and returned to the campsite, where T and Schamp were. Less than 10 minutes had passed since T and Schamp had left the river to collect firewood.

T and Schamp both stated later that, when the victim approached the campsite, she was visibly upset. T described her as "all shaky" and "wobbly" and "real scared." Schamp said that the victim was "rather excited, yelling to us" as she came up the trail and that, when she reached them, she was "just starting to go into tears." The victim took T aside and told her that defendant had touched her. T then told Schamp. Schamp's father and brother were staying at a nearby campsite, so he took the girls there to spend the night. He took them back home the next day.

The police were eventually notified, and defendant was charged with first-degree sexual abuse.[2] Defendant waived the right to a jury trial, and the case was tried to the court. Defendant did not dispute that he had touched the victim's buttocks several times, that she was less than 14 years old, or that her buttocks were an intimate part. Thus, the only factual issue for the court to resolve was whether defendant had touched the victim for a sexual purpose. After hearing the evidence and closing arguments, the court stated that "[i]t may well have been, under the best of facts," that the first touching was not for a sexual purpose, but it found, beyond a reasonable doubt, that the touching that followed was for sexual gratification.

At defendant's sentencing hearing, the court made a more expansive statement of its view of the facts in response

---

[2] ORS 163.427(1)(a)(A) provides that a person commits first-degree sexual abuse when that person "[s]ubjects another person to sexual contact and * * * [t]he victim is less than 14 years of age[.]" ORS 163.305(6) defines "sexual contact" as "any touching of the sexual or other intimate parts of a person * * * for the purpose of arousing or gratifying the sexual desire of either party." The victim testified that she regarded her buttocks as an intimate part.

to letters and an in-court statement from defendant's father calling the verdict into question:

> "The statements that [defendant] made to the police officer [who arrested him] and his description of what happened, I think [establishes that the contact was for a sexual purpose]. This was a situation where he was sitting next to her, she was leaning forward, he put his hand there, when she leaned back, he would touch her buttocks. That happened a couple, three times. He did not fondle her, he did not touch her inside her clothes, and he touched—he touched her buttocks, my impression was, below the waist. That happened at least twice, maybe three times. And when she got up, he brushed her rump off and that was the extent of the contact.

> "Now, does that—and I think the evidence clearly shows that he did it—he said he enjoyed it or he liked it, I can't remember what it was. But the point of it is, I'm convinced that's sexual contact. And so you can write me letters, but I'm not gonna respond. I'm a fact finder and that's what I found, I think the evidence shows that."

At the sentencing hearing, the court also heard statements from several other people, including the victim's guardian.[3] According to the guardian, after the abuse occurred, the victim began acting out sexually at school, made a suicide pact with a friend, attempted suicide, cut herself, and did poorly academically. She added that the trial, presentencing investigation, and sentencing caused the victim to "relive the details of that day," with the result that "we seem to fall back five steps in the progress we have fought so hard to make."

The state asked the court to apply the 75-month sentence prescribed by ORS 137.700 (Measure 11). Defendant argued that the Measure 11 sentence was disproportionate to his offense and that imposing it would violate Article I, section 16, of the Oregon Constitution.[4] The court agreed. It

---

[3] The victim went to live with her stepmother sometime after the abuse occurred. It is not clear from the record whether her stepmother was the guardian whose statement was heard.

[4] Defendant also argued that the Measure 11 sentence would constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution. He does not renew that argument on appeal.

noted a number of circumstances surrounding defendant's offense that it found persuasive. First, the court observed that, at the time of the offense, the victim was only one month shy of her fourteenth birthday and, had she been a month older, defendant's conduct would have constituted third-degree sexual abuse, which is a misdemeanor carrying a maximum sentence of one year. *See* ORS 161.615(1); ORS 163.415. The court also pointed out that the contact was on the outside of the clothes, did not involve fondling, was not forced, and was "minimal as it relates to meeting the definition of the crime." Finally, it also noted that defendant had no criminal history.[5] The court did not give significant weight to the emotional distress that defendant's conduct caused the victim. The court acknowledged that her distress was real but characterized it as "disproportionate to the conduct."

The court concluded that the Measure 11 sentence would be "so disproportionate as to shock the moral sense of all reasonable persons as to what a right and proper sentence should be." It instead sentenced defendant under the sentencing guidelines, imposing a sentence of 17 months.

On appeal, the state challenges the trial court's conclusion that the Measure 11 sentence would be unconstitutional. In the state's view, the court inappropriately considered the particular circumstances of defendant's offense. The state argues that individualized circumstances are not to be considered in determining whether a sentence violates Article I, section 16. According to the state, it is only the nature of the crime, not the defendant's specific conduct, that matters. In other words, the state contends, courts should consider only the bare fact that defendant sexually abused a 13-year-old child. The state points out that, in the only two cases in which the Supreme Court has overturned a sentence under that provision, it did so because the sentence was facially disproportionate—in other words, the court did not consider the surrounding circumstances. *See State v. Shumway*, 291 Or 153, 630 P2d 796 (1981); *Cannon v.*

---

[5] The court further noted that a psychological evaluation of defendant was done after he was arrested and that the evaluator did not believe that defendant needed sex offender treatment. The state pointed out that the evaluator, who was hired by defendant's attorney, also believed that defendant had not abused the victim. The court thereafter disregarded the evaluator's conclusion.

*Gladden*, 203 Or 629, 281 P2d 233 (1955). According to the state, the Supreme Court's jurisprudence does not permit consideration of anything but the crime itself, the punishment for that crime, and the punishment for other, related crimes. In all events, the state argues that the circumstances that the trial court relied on in this case do not warrant the conclusion that the Measure 11 sentence would be unconstitutional.

In response, defendant raises a number of arguments related to the *"Solem"* test, which a majority of the members of this court applied in *State v. Thorp*, 166 Or App 564, 2 P3d 903 (2000). The defendant in *State v. Rodriguez*, 217 Or App 351, 174 P3d 1100 (2007), raised essentially identical arguments, and we discussed them in some depth in that case. We explained that, although a well-established standard existed for analyzing "proportionality" sentencing challenges, the *Solem* test provides an analytical gloss on that standard that is useful in cases at the margins of Article I, section 16. We ultimately concluded that *Rodriguez* was not such a case and thus did not apply the *Solem* test.[6] We reach the same conclusion here and therefore apply only the unadorned traditional proportionality analysis.[7]

Under that analysis, a sentence violates Article I, section 16, if it is "so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper." *State v. Isom*, 313 Or 391, 401, 837 P2d 491 (1992). Article I, section 16, forbids only those sentences that are *grossly* disproportionate to the offense. *Thorp*, 166 Or App at 572. Oregon courts have long recognized that "establishing punishments for specific crimes is a matter reserved

___

[6] As we noted in *Rodriguez*, 217 Or App at 361 n 8, the gravity of the offense and the harshness of the penalty—two factors considered under the *Solem* test—are central to the question whether a sentence would shock the moral sense of all reasonable persons and therefore are considered in every proportionality challenge.

[7] Defendant raises other arguments in this case that are identical to arguments made in *Rodriguez*. We reject them here for the same reasons that we rejected them in *Rodriguez*. Defendant raises one additional argument with respect to the gravity of the offense. He contends that, had the victim been one month older, the offense would have been a misdemeanor, with a sentence of no more than one year. We rejected similar reasoning in *Thorp*, where, had the victim been 11 days older, the defendant would have had a complete defense to the charge against him. *See Thorp*, 166 Or App at 576. We reject defendant's argument without further discussion.

to the legislature, subject to constitutional limitation." *Id.*; *see also State v. Ferman-Velasco*, 157 Or App 415, 423, 971 P2d 897 (1998), *aff'd*, 333 Or 422, 41 P3d 404 (2002) ("The people, as well as the legislature, are entitled to make determinations about what punishments should be imposed for crimes."). Courts have been extremely deferential to the legislature's—and the people's—prerogative in establishing punishments. *State v. Meyrovich*, 204 Or App 385, 392-93, 129 P3d 729, *rev den*, 340 Or 673 (2006).

■   With those principles in mind, we turn to the state's contention that the trial court erred in considering the particular circumstances of defendant's offense. We acknowledge that neither we nor the Supreme Court have ever held a sentence to be invalid because the particular circumstances of the offense made the sentence disproportionate or cruel and unusual. Nevertheless, for three reasons, we reject the state's position.

First, the state's position would eliminate as-applied challenges to Measure 11 sentences, a result that is contrary to the Supreme Court's express acknowledgment of such challenges in *State ex rel Huddleston v. Sawyer*, 324 Or 597, 614, 932 P2d 1145, *cert den*, 522 US 994 (1997).

Second, the state's position conflicts with the plain wording of the standard enunciated by the Supreme Court for determining challenges under Article I, section 16. In *Sustar v. County Court for Marion Co.*, 101 Or 657, 665, 201 P 445 (1921), the court held, "In order to justify the court in declaring punishment cruel and unusual with reference to its duration, the punishment must be so proportioned to the offense committed as to shock the moral sense of all reasonable [persons] as to what is right and proper *under the circumstances.*" (Emphasis added.) *See also Cannon*, 203 Or at 632, ("The question presented is whether the penalty of life imprisonment for an assault with intent to commit rape *under the circumstances of this case* is proportioned to the offense, or is it so disproportioned to the offense as to shock the moral sense of all reasonable [persons] as to what is right and proper?" (Emphasis added.)).

Finally, as a matter of logic, the fact that neither this court nor the Supreme Court has ever overturned a sentence based on the particular circumstances *does not mean that*

consideration of the circumstances is not permissible. It merely means that we have yet to be confronted with a case in which the circumstances were such that the prescribed sentence was grossly disproportionate to the offense.[8] Contrary to the state's assertion, it is appropriate to consider the surrounding circumstances.

■ Nevertheless, we agree with the state that the circumstances of this case do not warrant the conclusion that the Measure 11 sentence would violate Article I, section 16. Defendant was a 36-year-old adult who was entrusted with responsibility for a 13-year-old child. Within minutes of being left alone with that child, he sexually abused her. He continued to touch her even after she made clear that the touching was unwelcome. The victim suffered lasting emotional distress as a consequence of defendant's conduct. Even taking into account the other circumstances that the trial court relied on, we conclude that a 75-month sentence would not shock the moral sense of all reasonable people. The trial court erred in concluding otherwise.

On appeal, sentence vacated and remanded for resentencing; otherwise affirmed. On cross-appeal, affirmed.

---

[8] We have, on the other hand, concluded that a particular sentence *was* permissible precisely because of the attendant circumstances. *See Rodriguez*, 217 Or App at 361; *Meyrovich*, 204 Or App at 392-93 (life sentence for forcibly kissing the victim on the neck was not disproportionate given the defendant's extensive history of sex offenses). We have also expressly considered surrounding circumstances and concluded that they did not render a particular sentence unconstitutional. *See, e.g., State v. Melillo*, 160 Or App 332, 336, 982 P2d 12, *rev den*, 329 Or 438 (1999) ("We conclude that a 90-month mandatory sentence under the circumstances of this case does not shock the moral sense of all reasonable people as to what is right and proper.").