Argued and submitted February 26, affirmed July 15, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVE GEORGE PARDEE,
*Defendant-Appellant.*

Lane County Circuit Court
200702801; A136180

215 P3d 870

Susan F. Drake, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant was convicted of two counts of rape in the first degree, four counts of sodomy in the first degree, two counts of unlawful sexual penetration in the first degree, and three counts of sexual abuse in the first degree. He was sentenced to a total of 400 months' incarceration followed by lifetime post-prison supervision (PPS). Some of that sentence was based on concurrent sentences of 300 months' incarceration plus lifetime PPS on the rape, sodomy, and sexual penetration counts—mandatory sentences required by statute. On appeal, defendant argues that those mandatory sentences are unconstitutional. We affirm.

■    The scope of this appeal is narrow. Defendant challenges the constitutionality of ORS 137.700(2)(b)(D) to (F) in combination with ORS 144.103(2), which require a court to impose mandatory sentences of 300 months' incarceration with mandatory lifetime PPS for each rape, sodomy, and sexual abuse conviction when the victim is under the age of 12. It is unclear from defendant's brief whether he argues that the statutes he challenges are facially unconstitutional or unconstitutional only as applied to him. However, a statute is facially unconstitutional only if it can never be applied constitutionally—that is, if the legislature violated the constitution when it enacted the statute, regardless of the circumstances in which it might be applied. *Advocates for Effective Regulation v. City of Eugene*, 160 Or App 292, 310, 981 P2d 368 (1999). Because we conclude that the sentences are constitutional under the circumstances of this case, we necessarily also conclude that the statutes are not facially unconstitutional.

Further, defendant's "Questions Presented" and "Summary of Argument" indicate that he will address, and present arguments based on, both the "proportionality" and "cruel and unusual" clauses of Article I, section 16, of the Oregon Constitution[1] as well as the Eighth Amendment to the United States Constitution. However, in the remainder of

---

[1] Article I, section 16, of the Oregon Constitution provides, in part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

the brief, after asserting that United States Supreme Court jurisprudence under the Eighth Amendment is the same as Oregon's state constitutional jurisprudence and summarizing the Oregon Supreme Court's recent decision in *State v. Wheeler*, 343 Or 652, 175 P3d 438 (2007), he develops an argument advancing only the single assertion that *Wheeler* addresses: that the sentences violate the proportionality clause of Article I, section 16. We therefore address that contention and no others. *See State v. Thompson*, 328 Or 248, 254 n 3, 971 P2d 879, *cert den*, 527 US 1042 (1999) (refusing to address constitutional claims in the absence of "thorough and focused constitutional analysis"). The question before us, then—and the only question we decide—is whether the court in this case imposed on defendant a sentence that violated Article I, section 16, of the Oregon Constitution.

In *Wheeler*, the court made a number of relevant observations regarding that provision. First, it concluded that the text of Article I, section 16, suggests that the "cruel and unusual" clause and the "proportionality" clause "should be interpreted independently, although the interpretation of one may inform the interpretation of the other." *Wheeler*, 343 Or at 656. That suggestion, the court concluded, is reinforced by an examination of the history surrounding the adoption of the provision. *Id.* at 665-66. The history also indicates that, "[a]t the most basic level, the framers' concern was that the penalty imposed on a criminal defendant be 'proportioned' to the specific offense for which the defendant was convicted— that it bear the appropriate 'comparative relation' to the severity of that crime." *Id.* at 667. To gauge proportionality, or the comparative relationship, of penalty to crime, the court observed that its cases over time have relied on two formulations. First, a penalty is disproportionate if it would " 'shock' " the " 'moral sense' " of " 'reasonable people.' " *Id.* at 668-69 (quoting *State v. Rogers*, 313 Or 356, 380, 836 P2d 1308 (1992), *cert den*, 507 US 974 (1993)). Second, a penalty is disproportionate if the legislative judgment reflected in its enactment is not " 'founded upon an arguably rational basis.' " *Wheeler*, 343 Or at 669 (quoting *Jensen v. Gladden*, 231 Or 141, 146, 372 P2d 183 (1962)) (emphasis in *Wheeler* omitted). Reconciling those two standards, the court in *Wheeler* stated that "the legislative enactment of the particular penalties"

serve as "an external source of law to assist in determining whether those penalties would shock the moral sense of reasonable people." 343 Or at 670-71.

The court also reviewed the case law in which the courts have been required to gauge the constitutionality of a penalty for one crime by comparing it to the penalty for other crimes. Stating the well-settled rule that the relative seriousness of crimes is presumptively a legislative decision, the court noted that it had sustained proportionality challenges based on comparing the penalty for one offense to the penalty for a different offense in only one kind of situation: where the penalty for one crime is more severe than the penalty for another crime of which the first is a lesser-included offense. *Id.* at 674-77.

Summarizing, the court explained:

> "The court has used the test of whether the penalty was so disproportioned to the offense as to 'shock the moral sense of reasonable people' and ordinarily has deferred to legislative judgments in assigning penalties for particular crimes, requiring only that the legislature's judgments be reasonable. The cases permit the legislature to impose enhanced sentences on recidivists, even if those sentences would be disproportionate when applied to a defendant without prior convictions. Finally, the proportionality provision bars the legislature from punishing a lesser-included offense (such as an attempt) more severely than the greater-inclusive offense (such as completion of the attempted crime)."

*Id.* at 676-77 (footnote omitted).

■■ Guided by the standards and principles that *Wheeler* reviews and establishes, we conclude that defendant's sentence was not unconstitutionally disproportionate to his crime. Defendant's primary argument is that, because the penalty for intentional murder—300 months' incarceration *without* mandatory lifetime PPS—is less severe than the penalty that he received for each of seven counts of which he was convicted, the latter penalties are disproportionate.[2] But

---

[2] We note that, under OAR 213-005-0004(1), the term of PPS for intentional murder is "the remainder of the offender's life, unless the Board [of Parole and Post-Prison Supervision (board)] finds a shorter term appropriate. In no case shall

as *Wheeler* makes clear, the text and history of Article I, section 16, establish that disproportionality is a measure of the relationship between a penalty and *the* offense, not the relationship between the penalty for one offense and the penalty for another. *Id.* at 656, 666. In the rare instances where the court has compared the penalties imposed for different crimes, a lesser-included offense had been punished more severely than a greater-inclusive offense. *Id.* at 674-77. That is not the case here.

■　　Nor are the concurrent 300-month sentences with lifetime PPS disproportionate to the crimes themselves. Again, the measure of disproportionality under *Wheeler* and earlier cases is whether the legislatively imposed penalty is so irrational that it shocks the moral sense of reasonable people. *Id.* at 670-71, 676. We conclude that it is not. Under the "shocks the moral sense" standard, we have upheld a sentence of 75 months' incarceration imposed on a 16-year-old boy for engaging in consensual sexual intercourse with his 13-year-old girlfriend. *State v. Thorp*, 166 Or App 564, 566, 580, 2 P3d 903 (2000), *rev dismissed*, 332 Or 559 (2001). We have upheld a sentence of life imprisonment imposed on a recidivist offender for forcibly kissing a woman on the neck. *State v. Meyrovich*, 204 Or App 385, 387, 393, 129 P3d 729, *rev den*, 340 Or 674 (2006). Indeed, no Oregon court has ever held that a particular sentence was disproportional to *the* offense for which it was imposed. As the court observed in *Wheeler*, 343 Or at 674,

> "The only two cases in which this court has held that particular penalties violate the proportionality requirement provide further refinement of the court's application of the 'moral shock' test—and demonstrate how rarely a sentence within the limits set by the legislature will be found to violate that requirement. Both cases involved situations in which the penalty for a lesser-included offense was greater than the penalty for the greater-inclusive offense."

---

the term of supervision be less than three years." We need not, and do not, decide whether, in light of the board's authority to shorten it, a lifetime PPS term for intentional murder is a proportionally lesser sentence than the "mandatory" life PPS term imposed for defendant's offenses.

We emphasize that a sentence might strike reasonable persons as overly punitive, socially unjustified, and a mistake in judgment by the legislature, without necessarily causing moral shock.

Nor does the "rational basis" test impose anything resembling a serious impediment to duly enacted legislation. As we have noted in a different context but with respect to the same standard of review, it derives from United States Supreme Court cases, and those cases and Oregon cases that follow them " 'reduce to * * * nearly total deference. * * * Since the New Deal, the number of times the Court has struck down statutes because they fail rationality review can probably be counted on the fingers of one hand.' " *Advanced Drainage Systems, Inc. v. City of Portland*, 214 Or App 534, 540-41, 166 P3d 580 (2007) (quoting *Cox v. State of Oregon*, 191 Or App 1, 14, 80 P3d 514 (2003) (Schuman, J., concurring)). Nothing in this case persuades us that the sentence is irrational under that standard. We therefore conclude that it did not violate defendant's right under Article I, section 16.

Affirmed.