110 November 19, 2025 No. 998

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES EDWARD GARRETT,
*Defendant-Appellant.*

Lane County Circuit Court
20CR60272; A183631

Erin A. Fennerty, Judge.

Submitted October 14, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin A. Carveth, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant appeals from a judgment of conviction for one count of first-degree sodomy (Count 1), ORS 163.405,[1] and one count of first-degree sexual abuse (Count 2), ORS 163.427.[2] Defendant waived jury and was tried by the court. He raises three assignments of error: (1) that the trial court erred when it denied his motion for judgment of acquittal (MJOA) on Count 2, (2) that the trial court erred in excluding evidence that defendant took and passed a polygraph examination, and (3) that the trial court erred when it imposed a 300-month sentence of imprisonment on Count 1.[3] For the reasons provided below, we affirm.

The state charged defendant with first-degree sexual abuse for subjecting K, a nine-year-old victim, to sexual contact by touching her bare hips and charged him with first-degree sodomy for touching his penis against her anus. Defendant, who is the cousin of K's father, was babysitting K and K's younger brother while the parents left for a weekend camping trip. Shortly after leaving the home, K's parents returned to pick up an item they had forgotten at home.

When K's father entered the home, he noticed his four-year-old son wandering around the living room alone. He noticed his bedroom door was closed and when he tried to open the door, he discovered it was locked. His daughter said "go away," because she thought it was her younger

---

[1] ORS 163.405 provides, in relevant part:

"(1)  A person who engages in oral or anal sexual intercourse with another person or causes another to engage in oral or anal sexual intercourse commits the crime of sodomy in the first degree if *** [t]he victim is under 12 years of age ***."

[2] ORS 163.427 provides, in relevant part:

"(1)  A person commits the crime of sexual abuse in the first degree when that person:

"(a)  Subjects another person to sexual contact and:

"(A)  The victim is less than 14 years of age ***."

"'Sexual contact' means any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(5). The exact text that is currently numbered ORS 163.305(5) was renumbered and had previously been ORS 163.305(6). For ease of readability, we use only ORS 163.305(5) in this opinion.

[3] The parties agree, as do we, that defendant's arguments are preserved.

brother trying to open the door. K's father quickly used a screwdriver to open the door. He saw that defendant was not wearing pants. His daughter slid off the bed and she was not wearing pants or underwear either. K's father called the police immediately.

Defendant told an officer that he had been caught in a "compromising situation" with K and that he knew "what [he] did was wrong." He said that K had been watching a YouTube video that involved "sexual positions," and that she wanted defendant to try a particular sexual position with her. Defendant explained that he had used his hands to "position her" on the bed and had his pants down.

K spoke with a different officer and told him that defendant "had done a bad thing." She said that defendant had shown her "positions" from a movie and that he had removed her clothing as well as his own. When the officer spoke with K about touching, her body language changed, she avoided eye contact and replied that there had not been any touching. The officer recommended K be evaluated at a hospital.

K was evaluated by a sexual assault nurse examiner on the same day as the incident. K told the nurse that defendant had taken off her clothing, played a video, and tried to touch her but was stopped from doing so by K's father. The nurse took swabs from multiple places including her perianal area. A forensic scientist found two sperm cells in the perianal sample. A DNA technician determined that the DNA was consistent with defendant's DNA.

K also spoke with a forensic interviewer. K told the forensic interviewer that defendant pulled her into her parents' bedroom, pushed her on the bed, took her pants off, and tried to touch her. K said that he was playing a video with "inappropriate positions." She said that defendant tried to touch her in places that her mom told her no one was supposed to touch and that he was "trying to reach for [her] bottom and stuff." When asked if defendant was able to touch her, she replied no and said she was "99 percent sure" that he didn't touch her bottom.

When interviewed at the police station, defendant told officers that K told defendant to join her in her parents' bedroom where she was watching a "sex positions" video on YouTube. Defendant said K took her own pants and underwear off and that she said she wanted to see what his "thing" looked like. Defendant complied. He explained that he was initially standing a foot behind K with his penis exposed and that while he was positioning her hips, his penis may have "brushed across her anus" or contacted it for "a little less than half a second."

A component of defendant's theory of the case was based on an evaluation by a clinical psychologist and expert in the field of sex abuse trauma and post-traumatic stress disorder (PTSD). She interviewed defendant and examined childhood records from the Oregon Department of Human Services (ODHS) pertaining to defendant. She determined that defendant has severe PTSD stemming from events in his childhood and that he may engage in confabulation, which occurs when a person fills in gaps in their memory with information that may or may not be accurate. She also explained that a person with PTSD may disassociate, "be entirely checked out," or have flashbacks.

In his first assignment of error, defendant argues that the court erred by denying his MJOA on Count 2. In his MJOA, defendant argued that under *State v. Woodley*, 306 Or 458, 760 P2d 884 (1988), the state was required to put on evidence to prove that K believed her hips to be an "intimate part" of her body. Defendant argued that the state had offered no evidence on that point and that defendant was entitled to acquittal on Count 2 as a matter of law. Defendant acknowledged that the state adduced evidence that K regarded the overall interaction as bad or invasive but argued that there was no evidence specifically about K's subjective belief that her *hips* were an intimate part of her body. On appeal, defendant reprises his argument. He asserts that the evidence adduced at trial indicates that K regarded her bottom as an intimate part, but not that she specifically identified her hips as an intimate part. Defendant also argues that K never specifically stated that defendant touched her hips. The state responds that there

was sufficient evidence to support the trial court's determination that K deemed her bare hips to be an intimate part of her body.

We review the denial of an MJOA to determine whether, after viewing the evidence in the light most favorable to the state and accepting reasonable inferences and credibility determinations, a rational factfinder could have found the elements of the crime beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

In the context of ORS 163.305(5), intimate parts are "parts that evoke the offensiveness of unwanted sexual intimacy, not offensive touch generally." *Woodley*, 306 Or at 461. Whether a body part is an "intimate part" or not may vary depending on different cultural and social customs, as well as with regard to "idiosyncratic sexual tastes or inhibitions." *Id.* at 461-62. For a part to be "intimate" pursuant to ORS 163.305(5), the person being touched must subjectively believe the part to be intimate. *Id.* at 463. In addition, the accused person must have either known that the victim regarded the part as intimate, or "the state must prove beyond a reasonable doubt that the accused should have recognized it to be an 'intimate part.'" *Id.*

In *State v. Miles*, 273 Or App 271, 281, 357 P3d 552, *rev den*, 358 Or 449 (2015), we determined that evidence that a three-year-old victim had been taught not to expose the area covered by her bathing suit bottoms, that she reacted by quickly covering her body back up by pulling up her bathing suit bottom when the defendant was interrupted, and that she had a habit of undressing only behind closed doors was more than sufficient to support the factfinder's determination that her hips were an intimate part of her body. In *State v. Meyrovich*, 204 Or App 385, 391, 129 P3d 729, *rev den*, 340 Or 673 (2006), we determined the defendant "knew or should have known" that the victim considered her neck to be an "intimate part" of her body within the meaning of ORS 163.305(5).

We are unpersuaded by defendant's attempts to distinguish this case from *Miles* or *Meyrovich*. The evidence

that supported the factfinder's determination that K deemed her hips to be an intimate part of her body or that defendant knew or should have known that K deemed her hips to be an intimate part of her body included that K immediately dressed, including covering her hips, once her father entered the room; and that she described defendant's efforts as "tr[ying] to touch [her] in inappropriate places *** [where] my mom had told me no one was supposed to touch me." Additionally, "[i]n ordinary social intercourse, one adult does not touch [the hips] of another [person] outside of intimate relationships, at least not without some unusual but reasonable justification ***." *Id.* at 391. The trial court did not err in denying defendant's MJOA.

In his second assignment of error, defendant argues that the trial court erred in excluding evidence that defendant took and passed a polygraph examination. Defendant acknowledges that *State v. Brown*, 297 Or 404, 442, 445, 687 P2d 751 (1984), provides controlling precedent that polygraph evidence is inadmissible in Oregon criminal trials. Yet, defendant argued at trial that *Brown* is no longer good law and remonstrates on appeal that "in the 40 years since *Brown*, both the analysis that applies to scientific evidence like polygraphs, and the technology, reliability and use of polygraphs themselves, have changed." The state responds that we must follow *Brown*, and that even if *Brown* were revisited, defendant's arguments fail because "[d]efendant fails to identify any material change in circumstances undermining *Brown*'s conclusions."

We are bound by the Supreme Court's decision regarding the admissibility of polygraph evidence unless and until such time as that court reconsiders and disavows it. *See Engweiler v. Board of Parole*, 291 Or App 355, 358, 421 P3d 424, *rev den*, 363 Or 599 (2018) (stating that we are bound by Supreme Court precedent). Thus, defendant is not entitled to relief on his second assignment of error.[4]

In his third assignment of error, defendant argues that the trial court erred when it imposed a 300-month

---

[4] We note that the trial court determined that the polygraph evidence that defendant sought to admit was inadmissible under *Brown*, under OEC 403, and additionally under OEC 608(2).

sentence of imprisonment on Count 1, because such a sentence is unconstitutionally disproportionate given that defendant's conduct was more akin to sexual abuse, which carries a 75-month prison term; that he has no prior criminal history; and due to his own personal history of being the target of physical and sexual abuse. The state responds that the 300-month sentence imposed on defendant does not "shock the moral sense" of reasonable people, *State v. Rodriguez/Buck*, 347 Or 46, 57-58, 217 P3d 659 (2009), and therefore does not violate the constitution.

We review the constitutional proportionality of an imposed "sentence for legal error, and we are bound by the trial court's findings of historical fact if supported by evidence in the record." *State v. Hurtado*, 335 Or App 560, 572, 558 P3d 1267 (2024), *rev den*, 373 Or 305 (2025) (internal citation omitted). Article I, section 16, of the Oregon Constitution provides in part that "all penalties shall be proportioned to the offense." A punishment violates Article I, section 16, "only if it is so disproportionate to the offense as to 'shock the moral sense' of reasonable people." *Id.* at 572 (citing *Rodriguez/Buck*, 347 Or at 57-58). In only "rare circumstances," will a sentence be deemed constitutionally disproportionate as applied. *Hurtado*, 335 Or App at 573. When we evaluate the proportionality of a sentence as-applied in a particular case, we consider at least three factors: "'(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant.'" *Id.* (quoting *Rodriguez/Buck*, 347 Or at 58). We consider "the specific defendant's particular conduct toward the victim that constituted the crime, as well as the general definition of the crime in the statute." *Rodriguez/Buck*, 347 Or at 62. We may also consider "characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim." *Id.* If a defendant had a supervisory or protective role over a child victim, that may weigh against finding a sentence to be constitutionally disproportionate. *See State v. McCombs*, 330 Or App 545, 564-65, 544 P3d 390, *rev den*, 372 Or 718 (2024) (the defendant was a "father figure" to the child).

Defendant argues that "all three [enumerated] *Rodriguez/Buck* factors weigh in favor of a finding" that the sentence imposed on defendant is unconstitutional. He argues that even though his conduct violated ORS 163.405, it was "at the minimal end" in comparison to "a whole swath of conduct that would also meet the statutory definition of sodomy, such as full anal penetration."

The state argues that we have "already rejected similar as-applied challenges to 300-month sentences in similar cases," including *State v. Alwinger*, 236 Or App 240, 246-47, 236 P3d 755 (2010), which is the most similar case that the state asks us to summarily rely on. In *Alwinger*, we rejected an argument that 300 months in prison was a constitutionally disproportionate sentence for the defendant's conduct of digitally penetrating a three-year-old child resulting in redness and irritation, but no other physical injuries. *Id.* at 242. The state also argues that "with respect to defendant's first-degree-sexual-abuse argument, contacting an anus with a penis is qualitatively more severe than touching with a hand, or at least the legislature could rationally so conclude."

"An as-applied proportionality analysis that considers the facts of an individual defendant's specific criminal conduct is particularly significant when the criminal statute at issue covers a broad range of activity, criminalizing a variety of forms and intensity of conduct." *Rodriguez/Buck*, 347 Or at 61. Although there is more severe conduct that violates ORS 163.405, we determine that defendant's conduct of touching his bare penis against the bare anus of a young child is severe. Defendant's conduct occurred while he was supposed to be caring for and protecting K and K's younger brother, *McCombs*, 330 Or App at 564-65 (sentence was not disproportionate for conduct involving a four-year-old child whom the defendant "was supposed to protect"), and while K was in a "sex position" behind a locked bedroom door, which was a vulnerable position for the nine-year-old, *cf. Rodriguez/Buck*, 347 Or at 49 (a 13-year-old boy was standing in a room with 30-50 other people when the defendant "brought the back of his head into contact with her clothed breasts"; a 13-year-old-girl was sitting and standing

while fishing during minor contact between the defendant's hand and her clothed buttocks—imposed sentences were deemed to be disproportionate for both defendants).[5] Although defendant's conduct is more minimal than other conduct proscribed by ORS 163.405, unlawful sexual contact with a young child is a severe crime. As in *Alwinger*, 236 Or App at 246, that defendant's conduct was brief "does little to minimize the severity of his offense, especially given the fact that his conduct was aimed at a particularly vulnerable victim." Furthermore, defendant's conduct was only interrupted when K's father used a screwdriver to break into the bedroom.

With regard to defendant's argument that his conduct was more akin to first-degree sexual abuse and that, therefore, his sentence should be deemed unconstitutional, it is not our role to "second-guess the legislature's determination of penalties or range of penalties for a crime unless a punishment is so disproportionate that it shocks the moral sense of reasonable people." *State v. Gonzalez*, 373 Or 248, 255, 564 P3d 109 (2025). The legislature could reasonably determine that contacting an anus with a penis, as prohibited by ORS 163.405, is qualitatively more severe than other forms of sexual conduct proscribed by first-degree sexual abuse, ORS 163.427.

Defendant's lack of criminal history has minimal bearing on his disproportionality challenge, given the severity of the crime. *McCombs*, 330 Or App at 564-65 ("Although [the] defendant has no prior criminal history, in light of his conduct [involving sexual abuse against a young child,] his lack of criminal history has little weight in balancing the proportionality of his sentences and is insufficient to render those sentences unconstitutional.").

---

[5] Evaluating "the severity of the penalty and the gravity of the crime" under the first *Rodriguez/Buck* factor, 347 Or at 58, requires us to evaluate the defendant's "offense" including both "the statutory definition of the crime," and "the specific defendant's particular conduct toward the victim that constituted the crime," *id.* at 61-62. In other words, when evaluating the first *Rodriguez/Buck* factor, it is not appropriate for us to directly compare the conduct described in *Rodriguez/Buck*, which constituted first-degree sexual abuse, ORS 163.427 (1)(a)(A), *id.* at 49, against the conduct in this case that provided the basis for a conviction of first-degree sodomy, ORS 163.405. Rather, our task is, in part, to consider the severity of defendant's conduct within the range of other conduct prohibited by ORS 163.405.

Defendant's argument that his "significant mental health issues" should be part of the analysis is at odds with the Supreme Court's decision in *Gonzalez*. 373 Or 248, 263-69. Although we do not read *Gonzalez* to permanently foreclose the possibility of mental health issues being considered in disproportionality challenges, it does foreclose that consideration in this case. *Id.* at 268. In *Gonzalez*, the Supreme Court held that the

> "[d]efendant has not cited any evidence of a societal standard recognizing that people who suffer from [depression, anxiety, adjustment disorder, and opioid-use disorder]— but who have the ability to form the requisite mental state and appreciate the gravity of their conduct—have reduced moral culpability for their criminal conduct to the extent that imposing the mandatory minimum sentence would violate Article I, section 16."

*Id.* In this case, defendant has not specified his mental health disorders, nor has he put forward evidence of a societal standard as contemplated in *Gonzalez*, and therefore his mental health characteristics cannot be considered in the disproportionality analysis. In sum, given the facts before us, we cannot say defendant's sentence is unconstitutional.

Affirmed.