187 P.3d 321 (2008)
STATE of Washington, Respondent,
v.
Ronell JACKSON, Appellant.
No. 60361-2-I.
Court of Appeals of Washington, Division 1.
July 14, 2008.
*322 David Bruce Koch, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Heidi Joanne Jacobsen-Watts, King County Prosecuting Attorney's Office, Seattle, WA, for Respondent.
LEACH, J.
¶ 1 Jackson appeals his conviction of second degree child molestation. He challenges the sufficiency of the evidence to prove that he had "sexual contact" with the victim, contending that his ejaculation onto the victim was not a touching. We disagree and affirm.

Background
¶ 2 R.S., a 12-year-old girl, awakened very early one morning to discover a warm, white liquid on her face. She could see her stepfather, Ronell Jackson, in the bathroom across the hall from her room. She wiped some of the liquid onto the covers and went to her mother's room to ask what was on her face.
¶ 3 Her mother, Kristie Johnson, smelled and tasted the substance and told R.S. to return to her room. Johnson then went to the bathroom and began screaming at Jackson and hitting him. Jackson left the apartment, and Johnson called the police. Johnson told the responding officers that she thought the substance on her daughter's face was semen.
¶ 4 The police obtained R.S.'s bedding and two tank tops she had slept in. DNA (deoxyribonucleic acid) testing revealed Jackson's semen on two pillow cases and both tank tops. Semen was found on the chest area and right shoulder of one tank top and on the collar, middle, left shoulder, and two areas near the bottom of the other.
¶ 5 Jackson was charged with and convicted of second degree child molestation.

Standard of Review
¶ 6 We review questions of statutory construction de novo[1] and sufficiency of evidence challenges in a light most favorable to the State.[2] We accept the State's evidence as true and view all reasonable inferences in favor of the State.[3] Circumstantial evidence is as reliable as direct evidence.[4] "Circumstantial evidence is evidence of facts or circumstances from which the existence or nonexistence of other facts may be reasonably inferred from common experience."[5] A trier of fact may rely exclusively upon circumstantial evidence to support its decision.[6] We defer to the trier of fact in matters of witness credibility and weight of evidence.[7] We will affirm if the trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[8]

Discussion
¶ 7 A person commits child molestation in the second degree when that person has *323 sexual contact with another who is at least 12 years but less than 14 years old.[9] The only issue on appeal is whether any rational trier of fact could have found beyond a reasonable doubt that sexual contact occurred between Jackson and R.S.
¶ 8 "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."[10] The statute defining "sexual contact" makes no distinction between the victim's intimate parts being touched by the accused or the accused's intimate parts being touched by the victim.[11] The touching may be made through clothing[12] and without direct contact between the accused and the victim.[13]
¶ 9 Contact is "intimate" within the meaning of the statute if the conduct is of such a nature that a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper.[14] Which anatomical areas, apart from genitalia and breast, are "intimate" is a question for the trier of fact.[15]
¶ 10 Jackson argues that ejaculating on another individual is not a "touching" for purposes of the "sexual contact" element. While conceding that his "penis was obviously the source of the semen," Jackson contends that there is insufficient evidence that he "touched" R.S. to support his conviction.[16]
¶ 11 There is no statutory definition of "touching." Our primary purpose in interpreting a statute is to ascertain and give effect to the intent and purpose of the legislature.[17] To do so, we look first to the language of the statute.[18] In the absence of a statutory definition, we give a term its plain and ordinary meaning ascertained from a standard dictionary.[19] The parties each cite different standard dictionary definitions to support their respective positions. Viewed in the historical context of the common law and the intent and purpose of the legislature, we find the State's position persuasive.
¶ 12 While there is little authority on whether ejaculation onto another person constitutes a "touching" of that person, the authority that does exist supports our conclusion that it is a "touching." In People v. Vinson,[20] the defendant contended that he did not "touch" his stepdaughter when he ejaculated onto jeans covering her buttocks. Like Jackson, he relied upon a dictionary definition of "touch" to be some part of the body coming into contact with something. The Vinson court rejected this narrow construction of "touch." It held that ejaculating semen onto the clothing covering another's intimate parts was "touching" and concluded that a contrary decision would defeat the legislature's intent and require the court to decide that using an object to touch another's intimate parts for sexual gratification does not constitute sexual contact.[21]
¶ 13 In United States v. Whitefeather,[22] the court held that a defendant's urination on the face of an individual who had passed out at a party constituted "bodily touching or contact" with another's person. In State v. *324 Dawson,[23] the defendant contended that evidence he put his semen in the victim's coffee mug, with the purpose of causing her to drink it, was insufficient to prove "physical contact" because he did not physically touch his victim. The court rejected this argument, noting that physical contact has been defined as "the touching of the person of another or something so intimately associated with, or attached to his person to be regarded as a part thereof."[24] The court relied upon State v. Keller[25] which held that spitting upon another constitutes physical contact just as much as does striking or slapping.
¶ 14 Further support for our decision can be found in the multitude of cases holding that spitting on another is physical contact constituting either a battery or a criminal assault.[26] Citing Regina v. Cotesworth,[27] the Appellate Court of Illinois stated "since the development of early common law, spitting has been recognized as an act sufficient to support a battery."[28] Thus, for over three centuries, the common law has considered the projection of one's bodily fluid onto another a touching sufficient to support a criminal conviction.
¶ 15 Jackson attempts to distinguish the assault cases by claiming that they involve a different type of touching. However, in State v. Stevens,[29] the court held that, under the facts before it, fourth degree assault was a lesser included offense of second degree child molestation. For purposes of its decision, the court used that part of the common law definition of assault requiring an unlawful touching with criminal intent. Inherent in the court's determination  that second degree child molestation necessarily includes the unlawful touching element of fourth degree assault  is a conclusion that the "touching" element of each offense involves the same definition of "touching." Otherwise, each element of fourth degree assault would not be a necessary element of second degree child molestation. Therefore, Jackson's effort to distinguish the assault cases fails.
¶ 16 Jackson also asserts that, had the legislature intended to include ejaculation as a form of "sexual contact," it could have expressly done so. He supports this argument with citations to Wisconsin and North Dakota statutes that expressly include ejaculation within their respective definitions of "sexual contact."[30] Our "[l]egislature has an established practice of defining prohibited acts in general terms, leaving to the judicial and executive branches the task of establishing specifics."[31] This delegation does not render a statute ambiguous or vague so long as the definition of the prohibited act, when read in the context of the statute as a whole, is sufficiently clear to provide a person of common intelligence and understanding with fair notice and ascertainable standards as to the prohibited conduct.[32]
*325 ¶ 17 We have previously observed that fair notice does not require that a statute spell out every detail and that "[s]ome aspects of the prohibited conduct may be left to the commonly accepted community sense of decency, propriety and morality."[33] Given the common law's centuries-old prohibition of touching another by spitting, we believe that a person of common intelligence and understanding has fair notice that ejaculating upon a minor child constitutes a "touching" for purposes of a statute prohibiting "sexual contact," particularly because of the obvious sexual gratification involved. Our analysis is consistent with the legislature's stated purpose of protecting the children of Washington from sexual abuse.[34]
¶ 18 Since Jackson does not dispute that his semen was found on the face and clothing covering the chest of R.S., the evidence was sufficient to support a jury's determination that Jackson had prohibited "sexual contact" with her by touching her intimate parts.
¶ 19 Even if we adopted the narrow definition of "touching" advanced by Jackson, the evidence was sufficient to sustain his conviction. In State v. Brooks,[35] the defendant masturbated on a baby while her mother was briefly absent from the home.[36] When the mother returned, she discovered semen on the baby's face, chest, and stomach.[37] The court rejected the defendant's argument that the charges against him should be dismissed because there was no direct evidence of sexual contact with the baby and held that the circumstantial evidence was sufficient to satisfy a finding of "sexual contact,"[38] because the statute does not require direct proof of direct contact between the defendant's sexual organs with the intimate parts of the victim.[39]
¶ 20 Jackson attempts to distinguish his case from Brooks by pointing out that in Brooks the baby's blanket and booties had been removed,[40] while in the present case there is no evidence that Jackson removed R.S.'s blankets or clothes. The distinction is irrelevant. As the Brooks court made clear, it was the presence of semen on the baby which was dispositive.[41]
¶ 21 Jackson also seeks to distinguish Brooks by pointing to R.S.'s testimony that Jackson never actually touched her or her clothing.[42] During cross examination, defense counsel had the following exchange with R.S.:
Q: "[I]t is true that at this time, this morning, you were never touched by Mr. Jackson; is that right?"
A: Yeah.
Q: He never touched you on your clothes or anything like that; is that correct?
A: Yeah.
¶ 22 While R.S. agreed with defense counsel's statements that Jackson never touched her, a jury might well have concluded that R.S. would not have been aware of being touched because she was asleep. Indeed, she testified that Jackson was not even in her room anymore when she awoke. Her first awareness that something was amiss was when she discovered his semen on her face. Just as the baby in Brooks could not testify about what happened to her, so the jury could have concluded that R.S. lacked personal knowledge of what occurred to her while she was asleep.
¶ 23 The jury was provided with instructions defining "second degree child molestation" and "sexual contact." Juries are presumed to follow instructions.[43] Under these facts, the jury could have found beyond reasonable doubt that Jackson had sexual *326 contact with R.S. and that the essential elements of second degree child molestation were present.

Conclusion
¶ 24 We affirm the judgment and sentence below.
WE CONCUR: SCHINDLER, C.J., and BECKER, J.
NOTES
[1] State v. Watson, 146 Wash.2d 947, 954, 51 P.3d 66 (2002).
[2] State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
[3] Salinas, 119 Wash.2d at 201, 829 P.2d 1068.
[4] State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980).
[5] WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.01, at 124 (2d ed. 1994).
[6] State v. Kovac, 50 Wash.App. 117, 119, 747 P.2d 484 (1987).
[7] State v. Walton, 64 Wash.App. 410, 415-16, 824 P.2d 533 (1992).
[8] Salinas, 119 Wash.2d at 201, 829 P.2d 1068.
[9] RCW 9A.44.086.
[10] RCW 9A.44.010(2).
[11] State v. Gary J.E., 99 Wash.App. 258, 265, 991 P.2d 1220 (2000).
[12] In re Adams, 24 Wash.App. 517, 519, 601 P.2d 995 (1979)
[13] State v. Brown, 55 Wash.App. 738, 780 P.2d 880 (1989) (holding the victim touched the defendant by operating the vacuum pump of a "penis enlarger").
[14] Adams, 24 Wash.App. at 521, 601 P.2d 995.
[15] Adams, 24 Wash.App. at 520, 601 P.2d 995.
[16] Br. of Appellant at 7.
[17] Watson, 146 Wash.2d at 954, 51 P.3d 66.
[18] Watson, 146 Wash.2d at 954, 51 P.3d 66.
[19] Watson, 146 Wash.2d at 954, 51 P.3d 66.
[20] 42 P.3d 86 (Colo.App.2002).
[21] Vinson, 42 P.3d at 87.
[22] 275 F.3d 741 (8th Cir.2002).
[23] State v. Dawson, 985 S.W.2d 941 (Mo.App. 1999).
[24] Dawson, 985 S.W.2d at 951 (citing State v. Greathouse, 789 S.W.2d 50, 52 (Mo.App. 1990)).
[25] State v. Keller, 40 Or.App. 143, 146, 594 P.2d 1250 (1979).
[26] See, e.g., United States v. Lewellyn, 481 F.3d 695 (9th Cir.2007) (holding that spitting in the face of a victim is an offensive touching constituting assault); United States v. Masel, 563 F.2d 322, 322-24 (7th Cir.1977) (holding that spitting in the face of a senator constitutes an offensive touching); United States v. Frizzi, 491 F.2d 1231, 1231-32 (1st Cir.1974) (holding that spitting in the face of postal worker was bodily contact constituting assault); Gilbert v. Commonwealth, 45 Va.App. 67, 608 S.E.2d 509 (2005) (holding that spitting upon an officer constitutes an assault and battery); and People v. Carlson, 183 Misc.2d 630, 705 N.Y.S.2d 830 (City Crim. Ct.1999) (holding that spitting in victim's face was physical contact for purpose of aggravated harassment charge).
[27] 6 Mod. Rep. 172, 87 Eng. Rep. 928 (Q.B. 1705).
[28] People v. Peck, 260 Ill.App.3d 812, 814, 198 Ill.Dec. 760, 633 N.E.2d 222 (1994).
[29] 158 Wash.2d 304, 143 P.3d 817 (2006).
[30] Wis. Stat. Ann. § 948.01(5); 1995 Wis. Act 69; and N.D. Cent.Code § 12.1-20-02(4); 2001, ch. 134, § 1.
[31] State v. Wadsworth, 139 Wash.2d 724, 743, 991 P.2d 80 (2000).
[32] Adams, 24 Wash.App. at 520, 601 P.2d 995.
[33] Adams, 24 Wash.App. at 520, 601 P.2d 995.
[34] Laws of 1994, ch. 271 § 301.
[35] 45 Wash.App. 824, 727 P.2d 988 (1986).
[36] Brooks, 45 Wash.App. at 825-26, 727 P.2d 988.
[37] Brooks, 45 Wash.App. at 825-26, 727 P.2d 988.
[38] Brooks, 45 Wash.App. at 826, 727 P.2d 988.
[39] Brooks, 45 Wash.App. at 827, 727 P.2d 988.
[40] Brooks, 45 Wash.App. at 825, 727 P.2d 988.
[41] Brooks, 45 Wash.App. at 827, 727 P.2d 988.
[42] Br. of Appellant at 3.
[43] State v. Graham, 59 Wash.App. 418, 428, 798 P.2d 314 (1990).