249 P.3d 160 (2011)
241 Or. App. 239
STATE of Oregon, Plaintiff-Respondent,
v.
Adam M. SERAFIN, Defendant-Appellant.
07P51207; A139214.
Court of Appeals of Oregon.
Argued and Submitted April 29, 2010.
Decided March 2, 2011.
*161 Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.
Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.
Before HASELTON, Presiding Judge, and ARMSTRONG, Judge, and EDMONDS, Senior Judge.
ARMSTRONG, J.
Defendant appeals a judgment of conviction for third-degree sexual abuse, ORS 163.415, private indecency, ORS 163.467, and harassment, ORS 166.065. He challenges on appeal only his sexual abuse conviction, arguing that he was entitled to a judgment of acquittal on the charge. We agree with defendant and, accordingly, reverse his conviction on that charge.
Because our review concerns the denial of a judgment of acquittal, we state the facts in the light most favorable to the state. E.g., State v. Rader, 348 Or. 81, 83, 228 P.3d 552 (2010).[1] Defendant joined a husband and wife for a social evening at their apartment. During the evening, defendant and the husband spent time with friends at another apartment, watching a football game and drinking alcohol to the point that defendant and the husband became intoxicated. The husband invited defendant to spend the night at his and his wife's apartment, and defendant accepted the invitation.
Because of the wife's health, she slept in a recliner in the living room, and the two men slept on opposite sides of her, the husband on a couch and defendant on another recliner. The wife awoke at about 3:00 a.m. and felt a sensation of wetness on one of her exposed shins. She looked up and saw defendant holding his erect penis in his hand and ejaculating on her leg as he masturbated. She screamed, causing defendant to put his penis back into his pants, zip them, and run into the kitchen. The wife awakened her husband and told him what had happened, which led the husband to throw defendant out of the apartment. The couple reported defendant's conduct to the police the next day, prompting an investigation that led to the charges of which defendant was convicted.
ORS 163.415(1)(a) (2007)[2] provides that a person commits the crime of third-degree sexual abuse if
"(1) * * * the person subjects another person to sexual contact and:
"(a) The victim does not consent to the sexual contact; or
"(b) The victim is incapable of consent by reason of being under 18 years of age."
"Sexual contact," in turn, is defined in ORS 163.305(6) to mean

*162 "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."
There is no dispute that the conduct in which defendant engaged in ejaculating semen on the victim's shin was sexual and was abusive toward the victim. The question, however, is whether the contact between defendant's semen and the victim's shin comes within the definition of sexual contact in ORS 163.305(6). There is no basis in this record on which a factfinder could find that the victim's shin was an intimate part of her body, so defendant's ejaculation of semen onto the victim did not constitute touching by him of a sexual or intimate part of the victim.[3] Hence, the question reduces to whether defendant caused the victim to touch a sexual or intimate part of defendant's body by causing the victim to come into contact with defendant's semen.
Defendant's principal argument is that bodily fluids, such as blood, urine, and semen, are not parts of the body. In his view, they are substances that are generated and contained within bodies, and, although they may be excreted or expelled from bodies, they are not parts of them. Consequently, the victim's contact with defendant's semen did not constitute contact with a part of defendant's body.
The state responds that bodily fluids are part of the body and that semen, by its nature, is a sexual part of it. In other words, the state posits that semen is a part of the body regardless of whether it is contained within the body or has been expelled from it. Consequently, in its view, the victim's contact with defendant's semen constituted contact by the victim with a sexual part of defendant's body.
As we will explain, the essential feature of the proscription in the third-degree sexual abuse statute is that it is a person's body that must be touched for the statute to apply. That proscription is limited to certain parts of the body, viz., sexual and other intimate parts, but those parts must be part of the body when touched because, if they are not, then the person touching them has not touched the other person. The victim's contact with defendant's semen after it had been expelled from his body was not contact with defendant's body, so that contact did not constitute third-degree sexual abuse.
The consistent theme in the cases applying the third-degree sexual abuse statute and in the commentary that accompanied the statute's enactment in 1971 is that the statute is designed to impose certain limits on the touching of one person by another. The cases and the commentary have grappled with the challenge of resolving whether a particular part of a person's body is an intimate part, but they have done so based on an understanding that the focus of the statute is on nonconsensual touching of one person by another.
For example, in State v. Woodley, 306 Or. 458, 760 P.2d 884 (1988), the Supreme Court concluded that the determination whether a part of a person's body is an intimate part presents a factual rather than a legal question. It also established the legal test by which a factfinder is to make that determination. Id. at 460-63, 760 P.2d 884.
In resolving those issues, the court explained:
"In protecting `intimate areas' of the human body, the statute invokes individual and cultural standards, and perhaps also the social psychology of group decision by a jury asked to agree on what is `intimate' while reacting to the circumstances of one case. No area of the anatomy is intrinsically intimate, for instance, to an X-ray camera. The question is whose sense of intimacy matters. Is the perception that of the person touched, of the person who touches, of a third person such as a parent or bystander? Is it that of the legislature, *163 of some identifiable community, or of the factfinder at trial?"
Id. at 460-61, 760 P.2d 884. The court ultimately resolved that question by establishing the following test by which a factfinder is to determine whether the person who has been touched was touched in an area of the body that is intimate:
"First, because the object of the statute is to protect persons from unwanted intimacies, the part must be regarded as `intimate' by the person touched. This is a subjective test.
"Second, if an accused touched this part knowing that the touched person regarded it as intimate and did not consent, the accused violates the statute if the requisite sexual purpose is proved. If the accused, regardless of his or her private purpose, did not know that the part was `intimate' to the person touched, the state must prove beyond a reasonable doubt that the accused should have recognized it to be an `intimate part.' The latter is an objective test.
"In other words, the part must be subjectively intimate to the person touched, and either known by the accused to be so or to be an area of the anatomy that would be objectively known to be intimate by any reasonable person."
Id. at 463, 760 P.2d 884. Throughout that discussion, the court understood the statute to apply to the act of touching another person.
To the same effect is our discussion in State v. Meyrovich, 204 Or.App. 385, 129 P.3d 729, rev den, 340 Or. 673, 136 P.3d 743 (2006). There, we had to determine whether a person's neck could be an intimate part of the person's body. We concluded that it could be, explaining that the legislature intended the term "intimate part[ ]" in ORS 163.305(6)
"to mean a body part that the person ordinarily allows to be touched only by other people with whom the person has an intimate relationship, that is, a `very close personal relationship[ ]' marked by `love, * * * ardent liking, * * * or mutual cherishing[.]'"
Id. at 391, 129 P.3d 729 (quoting Webster's Third New Int'l Dictionary 1184 (unabridged ed. 2002)) (brackets in original). In light of that understanding, we held that a factfinder could find a person's neck to be an intimate part of the person's body. As with the Supreme Court in Woodley, implicit in our understanding of the statute is that it applies to the act of touching another person in a place on the person's body that the person considers to be intimate.
The commentary to the third-degree sexual abuse statute reflects the same understanding. It provides, as relevant:
"The offense of sexual abuse is intended to cover all unconsented acts of sexual contact which do not involve the element of genital penetration. The section encompasses the following types of behavior:
"(1) Fondling
"(2) Manipulation of genitals
"(3) Digital penetration
"(4) Sadistic or masochistic flagellation
"* * * * *
"The definition of sexual contact * * * proscribes any nonconsensual salacious `touching' of a person's sexual or other intimate parts. An actual touching is required. * * * However, the contact need not be directly with the person's body; it is sufficient if the defendant touches the victim's sexual or intimate parts through clothing. The contact need only be with either the victim or the actor but it need not be between them. * * *
"The inclusion of the words `or other intimate parts' does not limit the touching to genitalia but is intended to include genitalia, breasts and whatever anatomical areas the trier of fact deems `intimate' in the particular cases which arise. Thus the ultimate decision of `intimate' parts is left to the community sense of decency, propriety and morality."
Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 115, 122 (July 1970).
Taken together, that discussion describes actions that involve touching a person on specified parts of the person's body, viz., *164 "anatomical areas" comprising sexual and other intimate parts of the person's body. It requires contact with "either the victim or the actor," which means that contact with something, such as ejaculated semen, that is not part of or physically connected to the victim or actor when the contact occurs is not conduct that comes within the statute.
In sum, the cases applying the third-degree sexual abuse statute and the commentary accompanying its enactment uniformly treat the statute as one that proscribes nonconsensual touching for sexual purposes of a person on the sexual or intimate parts of the person's body. It is not addressed to conduct by which a person causes another person to touch semen or other fluids expelled from the actor's body, that is, to touch things that, when touched, are not part of the actor's body.
Here, defendant touched the victim by ejaculating semen on her shin. The ejaculation of semen on the victim's shin constituted contact by defendant with the victim. Cf., e.g., State v. Keller, 40 Or.App. 143, 145-47, 594 P.2d 1250 (1979) (under the harassment statute, spitting on person constituted contact with that person by the person who spit). As we have explained, however, the semen did not touch a sexual or intimate part of the victim's body, so that touching of the victim by defendant does not come within the definition of contact for purposes of the third-degree sexual abuse statute. Of course, the statute proscribes both touching a person on a sexual or intimate part of that person's body and causing that person to touch the actor on a sexual or intimate part of the actor's body. Although defendant touched the victim by ejaculating semen onto her shin, the converse is not true: she did not touch defendant by touching his ejaculated semen. ORS 163.305(6). Hence, defendant did not commit third-degree sexual abuse by ejaculating semen onto the victim's shin.
Our understanding of the Oregon sexual abuse statute tracks that of the Washington Court of Appeals in its application of a comparable Washington statute in State v. Jackson, 145 Wash.App. 814, 187 P.3d 321 (2008). The state places significant reliance on Jackson as support for its argument about the Oregon statute, but, as we will explain, Jackson cuts the other way.
In Jackson, the defendant was convicted of second-degree child molestation for having ejaculated semen onto both the face and the clothing covering the chest of his 12-year-old stepdaughter while she was asleep. The issue on appeal was whether, by doing that, the defendant had had sexual contact with his stepdaughter.
In resolving that issue, the court explained the operation of the second-degree child molestation statute, which prohibited sexual contact with a child who is at least 12 years but less than 14 years old:
"`Sexual contact' is defined as `any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party.' The statute defining `sexual contact' makes no distinction between the victim's intimate parts being touched by the accused or the accused's intimate parts being touched by the victim. The touching may be made through clothing and without direct contact between the accused and the victim.
"Contact is `intimate' within the meaning of the statute if the conduct is of such a nature that a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper. Which anatomical areas, apart from genitalia and breast, are `intimate' is a question for the trier of fact."
Id. at 819, 187 P.3d at 323 (footnotes omitted).
In light of that understanding, the court concluded that the defendant had violated the child molestation statute because, by ejaculating semen onto his stepdaughter's face and chest, he had "had prohibited `sexual contact' with her by touching her intimate parts." Id. at 823, 187 P.3d at 325 (emphasis added). In other words, as in our case, the court viewed the defendant's ejaculation of semen onto the victim as an act in which the defendant had touched the victim, not as one *165 in which the victim had touched him. The difference between the cases is that, in the Washington case, the parts of the victim's body that the defendant had touchedher face and chestwere found by the jury to be intimate parts, while, here, the part that defendant touchedthe victim's shinwas not. The court's explanation and application of the Washington statute on prohibited sexual contact is completely consistent with our understanding and application of Oregon's comparable statute.[4]
In summary, defendant engaged in conduct toward the victim that was sexual and abusive but that did not constitute third-degree sexual abuse under the version of the statute in effect at the time. His conduct would violate the current version of the third-degree sexual abuse statute, see 241 Or.App. at 248 n. 4, 249 P.3d at 165 n. 4, and did violate the harassment and private indecency statutes under which he was convicted. Under the law in effect when defendant acted, the trial court erred in failing to enter a judgment of acquittal on the third-degree sexual abuse charge.
Conviction for third-degree sexual abuse reversed; remanded for resentencing; otherwise affirmed.
NOTES
[1] Defendant did not move for a judgment of acquittal on the sexual abuse charge in this case, which was tried to the court on stipulated facts. He did, however, present a legal argument to the court before trial and at its conclusion that challenged the sufficiency of the evidence to support a conviction for third-degree sexual abuse, which the trial court addressed in its letter opinion explaining the basis of its conviction of defendant on the charge. Hence, defendant preserved his challenge to his conviction on the sexual abuse charge. See, e.g., State v. Forrester, 203 Or.App. 151, 155, 125 P.3d 47 (2005), rev den, 341 Or. 141, 139 P.3d 259 (2006).
[2] ORS 163.415 was amended in 2009 to expand the conduct that can constitute third-degree sexual abuse. Or. Laws 2009, ch. 616, § 1; see 241 Or.App. at 248 n. 4, 249 P.3d at 165 n. 4 (explaining 2009 amendment). Defendant engaged in the conduct at issue in this case before the amendment became effective, so the amendment does not apply to the case. Accordingly, all references to ORS 163.415 are to the 2007 version.
[3] To avoid misunderstanding, we note that the question whether a part of a person's body is an intimate part presents a factual question with both subjective and objective elements. State v. Woodley, 306 Or. 458, 462-63, 760 P.2d 884 (1988). Hence, our conclusion that the shin of the victim's leg was not an intimate part of her body is based on the record in this case and does not represent a conclusion that it could never be found to be an intimate part of a person's body.
[4] As previously indicated, 241 Or.App. at 242 n. 2, 249 P.3d at 161 n. 2, the Oregon legislature amended the third-degree sexual abuse statute in 2009 to cover conduct of the type in which defendant engaged in this case, and the way that it did that is telling. The amendment expanded the scope of the statute to provide that a person violates the statute if,

"[f]or the purpose of arousing or gratifying the sexual desire of the person or another person, the person intentionally propels any dangerous substance at a victim without the consent of the victim."
Or. Laws 2009, ch. 616, § 1. It defines dangerous substance, in turn, to mean blood, urine, semen, or feces. Id.
We recognize that the 2009 amendment to the third-degree sexual abuse statute has no direct bearing on the meaning of the version of the statute applicable here. See, e.g., Nakashima v. Board of Education, 204 Or.App. 535, 549, 131 P.3d 749, adh'd to on recons, 206 Or.App. 568, 138 P.3d 854 (2006), aff'd, 344 Or. 497, 185 P.3d 429 (2008). However, it is noteworthy that the legislature decided in 2009 to specifically address conduct of the type at issue in this and similar cases, such as the Jackson case in Washington. In doing so, the legislature left intact the focus of the original proscription on unwanted touching and added a provision that focuses on specific bodily substances and proscribes propelling them at the victim without regard to the source of the substances and without regard to whether they touch the victim and, concomitantly, to which parts of the victim's body they touch, if they do.