Submitted December 6, 2018, reversed and remanded with instructions to enter judgment of conviction for third-degree sexual abuse and for resentencing April 29, petition for review denied August 27, 2020 (366 Or 826)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRANDON TAYLOR BECKNER,
*Defendant-Appellant.*

Linn County Circuit Court
16CR35023; A164610

466 P3d 1000

Defendant was convicted of one count of sexual abuse in the first degree, ORS 163.427, and sentenced to life in prison without the possibility of parole. On appeal, he argues that the trial court erred in denying his motion for judgment of acquittal, because the evidence was insufficient to establish forcible compulsion. Viewed in the light most favorable to the state, the evidence showed that defendant approached the victim in a women's restroom, placed a finger to his lips in a "stay quiet" gesture, grabbed the victim by the hips with both hands, and then put both hands on her breasts. The victim fled the restroom as soon as defendant touched her breasts. *Held*: The trial court erred in denying the motion for judgment of acquittal. Regarding defendant's finger-to-lips gesture, the evidence was insufficient to establish that that gesture was an express or implied threat that placed the victim in fear of immediate or future death, physical injury, or kidnap and caused her to submit to the touching of her breasts. Regarding defendant's grabbing of the victim's hips, the evidence was insufficient to establish that that unwanted contact was an act of physical force that compelled the victim to submit to the touching of her breasts.

Reversed and remanded with instructions to enter judgment of conviction for third-degree sexual abuse and for resentencing.

Daniel R. Murphy, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Susan G. Howe, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed and remanded with instructions to enter judgment of conviction for third-degree sexual abuse and for resentencing.

**AOYAGI, J.**

Defendant was convicted of one count of sexual abuse in the first degree, ORS 163.427, and sentenced to life in prison without the possibility of parole. On appeal, he assigns error to the trial court's denial of his motion for judgment of acquittal, asserting that there was insufficient evidence of forcible compulsion. He also challenges his sentence as constitutionally disproportionate, citing the nature of the offense, the specifics of his criminal history, and his significant mental health issues. For the reasons that follow, we agree that the trial court erred in denying the motion for judgment of acquittal. Given our disposition, we do not reach defendant's other assignment of error. We reverse and remand for the trial court to enter a conviction for sexual abuse in the third degree, ORS 163.415, and for resentencing.

## FACTS

In reviewing the denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational factfinder could find that the state had proven the essential elements of the offense beyond a reasonable doubt. *State v. Lupoli*, 348 Or 346, 366, 234 P3d 117 (2010). We state the facts in accordance with that standard.

Defendant entered a women's restroom in a market building in Albany and went inside one of the stalls. Subsequently, the victim, who worked in the building, came into the restroom. She noticed that one of the stalls was occupied. The victim went into the fifth stall, used the toilet, and exited the stall. As she was walking to the sinks, the victim saw a head pop up from the occupied stall. She did not see the person, but it seemed odd. She went to the far right sink closest to the door and started washing her hands. While washing her hands, the victim looked in the mirror and saw defendant come out of the occupied stall and approach her from behind. At that point, she could see clearly that it was a man. The victim, who is 5'7", described the man as a "little bit taller" than her and "a bit thicker *** [b]ut not fat." Defendant silently put his finger to his lips. The victim was "shocked" and "startled" by the gesture, which she interpreted as threatening

and understood to mean "stay quiet." If he had not made the gesture, she would have thought he was "someone who associates with being a woman." Once he made the gesture, she did not know his intentions.

As the victim turned to face him, defendant grabbed the victim's hips with both of his hands in "a pretty firm grab" for "maybe a couple of seconds." The victim was "just so in shock" when he grabbed her hips that she "felt like [she] couldn't move." Defendant released her hips and grabbed her breasts with both hands. He grabbed her breasts less firmly than he had her hips. As soon as defendant touched her breasts, the victim turned and ran out the door. Defendant did not tighten his grip or do anything to try to stop her leaving. The victim could not say whether the entire incident lasted more or less than 10 seconds; she could only say that everything happened "very quickly."

Defendant was charged with one count of sexual abuse in the first degree. Specifically, the indictment charged him with "unlawfully and knowingly, by means of forcible compulsion, subject[ing the victim], to sexual contact by touching her breasts, a sexual or intimate part of [the victim]." *See* ORS 163.427(1)(a)(B) ("A person commits the crime of sexual abuse in the first degree when that person *** [s]ubjects another person to sexual contact and *** [t]he victim is subjected to forcible compulsion by the actor[.]"). "Forcible compulsion" is compulsion by either (1) "physical force," or (2) "[a] threat, express or implied, that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will immediately or in the future be kidnapped." ORS 163.305(1).[1]

Defendant waived jury and proceeded to a bench trial. At the close of the state's evidence, defendant moved for a judgment of acquittal, arguing that the evidence was insufficient to prove forcible compulsion and that, consequently, the court should consider only the lesser-included offense of third-degree sexual abuse. *See* ORS 163.415(1) ("A person commits the crime of sexual abuse in the third

---

[1] ORS 163.305 was amended in 2017, but those amendments do not affect our analysis, so we refer to the current version of the statute.

degree if \* \* \* [t]he person subjects another person to sexual contact and \* \* \* [t]he victim does not consent to the sexual contact[.]"). The state opposed the motion. It argued that, by grabbing the victim's hips, defendant physically compelled her to submit to the grabbing of her breasts. Alternatively, the state pointed to defendant's finger-to-lips gesture as a threat of harm.

The trial court denied defendant's motion. The court explained that its interpretation of the caselaw was that forcible compulsion comes down to whether the victim was "reasonably coerced under the circumstances," which is a "contextual determination." The court then identified the evidence that it considered relevant to the analysis and concluded that the victim reasonably felt coerced in these circumstances:

> "[S]he's alone with a man in a bathroom where he has no business being, and he's telling her through a gesture to be silent. The reasonable person would be coerced by that. A reasonable person would find that to be a coercive act under those circumstances. He then—if there was any doubt up until then, the doubt totally evaporates as soon as he grabs her by the hips. As soon as he grabs her by the hips, he is now exercising coercive physical control over her, which not only significantly exacerbates the level of coercion but also removes any ambiguity that may have previously existed concerning the meaning of his shushing gesture or anything else that he did. At that point there is complete reasonable objective and subjective basis for fear and coercion."

The trial proceeded. Sitting as factfinder, the trial court found defendant guilty of sexual abuse in the first degree. He was convicted and sentenced to life in prison without the possibility of parole.[2]

## ANALYSIS

On appeal, defendant assigns error to the trial court's denial of his motion for judgment of acquittal on

---

[2] "The presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence." ORS 137.719(1). Sexual abuse in the first degree is a Class B felony, ORS 163.427(2), and defendant has two prior convictions for felony public indecency.

first-degree sexual abuse, arguing that the evidence was insufficient to establish forcible compulsion. Specifically, defendant argues that the evidence was insufficient to establish (1) that his grabbing of the victim's hips was an act of physical force that compelled the victim to submit to defendant's grabbing of her breasts, or (2) that his finger-to-lips gesture was a threat of death, physical injury, or kidnap that compelled the victim to submit to defendant's grabbing of her breasts. The state responds that the evidence was sufficient to prove forcible compulsion, because it showed that defendant used the element of surprise, an implicit threat of harm, and the physical force of grabbing the victim's hips to "immobilize" the victim in order to grab her breasts.

This is a difficult case that requires a close analysis of the requirements to establish forcible compulsion for the crime of first-degree sexual abuse, ORS 163.427(1)(a)(B). Ultimately, however, we agree with defendant that the state's evidence was insufficient to establish forcible compulsion.

There is no question that the evidence was sufficient to establish sexual abuse. That is, defendant does not dispute (nor could he) that there was evidence that he subjected the victim to nonconsensual sexual contact when he grabbed her breasts. The only question on appeal is whether there was evidence that defendant used forcible compulsion, *i.e.*, that he compelled the victim to submit to the grabbing of her breasts by using either "physical force" or a qualifying "threat." ORS 163.305(1).

Given the sequence of events, we begin with whether the evidence was sufficient to establish forcible compulsion by threat. Not all threats qualify for forcible compulsion. Rather, the statute requires "[a] threat, express or implied, that places a person in fear of immediate or future death or physical injury to self or another person, or in fear that the person or another person will immediately or in the future be kidnapped." ORS 163.305(1)(b). In light of the statutory context, the threat must go beyond the threat of sexual contact itself. That is, forcible compulsion by threat requires the perpetrator to say or do something that places the victim in fear that she or someone else will be *killed*, *physically injured*, or *kidnapped* unless she submits to or engages in

the sexual contact. It is not enough that the perpetrator says or does something that places the victim in fear that the perpetrator is going to sexually touch her.[3]

Here, defendant placed a finger to his lips in a "stay quiet" gesture as he silently approached the victim from behind while they were alone in a women's restroom. That is an incredibly unsettling thing to experience. The victim perceived the gesture as threatening, and there is no dispute that such a gesture in such circumstances reasonably would cause a person to feel fear and trepidation, as the victim did. However, the statute requires more than generalized fear and trepidation, or even a fear of imminent nonconsensual contact. The statute requires the defendant to have made an express or implied threat of immediate or future death, physical injury, or kidnapping of the victim or another person. ORS 163.305(1)(b); *see also State v. Magel*, 246 Or App 725, 734-35, 268 P3d 666 (2011) (concluding that the evidence was insufficient to support a conviction for first-degree rape based on forcible compulsion by threat, where the victim subjectively believed that the defendant would physically force her to engage in sexual intercourse if she tried to resist, but where the defendant had not actually said or done anything that "qualif[ied] as an implied threat in the legal sense").

The evidence in this case was insufficient to meet that legal standard. The victim did not testify that defendant putting his finger to his lips caused her to fear that he would kill, physically injure, or kidnap her unless she submitted to unwanted sexual contact.[4] Nor could a factfinder reasonably infer that, when defendant put his finger to his lips, he was implicitly threatening to kill, physically injure,

---

[3] We express no opinion as to whether, in a different statutory context, a threat of unwanted sexual contact might constitute a threat of "physical injury." In this context—a statute in which sexual abuse is a given and only the degree of the crime is at issue—it is evident that the legislature intended a threat of "physical injury" to mean injury beyond the sexual contact itself. Otherwise, every act of sexual abuse would be forcibly compelled by threat, because, at some point, the victim would fear that she was about to be sexually abused.

[4] The victim did testify to a generalized "concern" that "possibly" "something" could happen to her if she ran out of the restroom. As discussed, however, ORS 163.305(1)(b) requires more than generalized fear and trepidation.

or kidnap the victim if she did not submit to sexual contact. The line between speculation and reasonable inference is "sometimes faint" and may be "difficult to articulate with precision," but "we have held evidence insufficient to support an inference when the conclusion to be drawn from it requires too great an inferential leap." *State v. Bivins*, 191 Or App 460, 467-68, 83 P3d 379 (2004) (internal quotation marks omitted). Here, inferring that, when defendant put his finger to his lips, he was threatening to kill, physically injure, or kidnap the victim if she did not submit to sexual contact is too great an inferential leap.[5] The evidence was therefore insufficient to establish forcible compulsion by threat as defined in ORS 163.305(1)(b).

The next question is whether the evidence was sufficient to establish forcible compulsion by physical force. Forcible compulsion by physical force occurs when a person uses "physical force" to "compel" someone to "submit to or engage in" sexual contact. ORS 163.305(1)(a); *see State v. Marshall*, 350 Or 208, 217-18, 253 P3d 1017 (2011) (concluding that, although ORS 163.427 does not specify what the victim is being forcibly "compelled" to do, the "only possible" meaning in context is that the victim is being compelled by force to "submit to or engage in" sexual contact). The state is no longer required to prove that the person used enough physical force to "overcome earnest resistance," as was required prior to 1999. ORS 163.305(2) (1997) ("'Forcible compulsion' means physical force that overcomes earnest resistance * * *."). Rather, the state must prove that the person used enough force to overcome the victim's will, *i.e.*, the victim's desire not to engage in the sexual contact, regardless whether the victim was actively resisting, passively submitting to, or unwillingly engaging in the sexual contact. *Marshall*, 350 Or at 225 (stating that the statute requires the use of physical force "of a degree or quality that is sufficient to *compel* the act at issue—sufficient, that is, to cause

---

[5] We note that defendant and the victim were strangers to each other, so defendant's gesture carried no special significance. The victim understood it to have its usual meaning of "stay quiet." *See State v. Jimenez*, 247 Or App 738, 745-46, 270 P3d 405 (2012) (considering earlier interactions between the victim and the defendant as relevant to whether defendant's conduct involved an implicit threat).

a victim to submit to, or to engage in, the sexual contact against his or her will" (emphasis in original).[6]

How much force was necessary to overcome the victim's will is ordinarily a question of "degree" and highly context dependent. *Id.* The force "need not [have risen] to the level of violence," but it "must [have been] sufficient to 'compel' the victim, against the victim's will, to submit to or engage in the sexual contact." *Id.* Factors such as the victim's age, differences in age, size, and strength between the victim and the defendant, and the relationship between the victim and the defendant all may be relevant to whether the amount of force was "sufficient to 'compel' [the victim] to submit to or engage in a sexual contact against his or her will." *Id.* at 226; *see, e.g., State v. O'Hara*, 251 Or App 244, 250-51, 283 P3d 396 (2012), *abrogated on other grounds by State v. Varnornum*, 354 Or 614, 317 P3d 889 (2013) (holding that there was sufficient evidence of forcible compulsion where the defendant, a physically large man in his mid-40s, used his body weight to push the teenaged victim down onto a bed, and then held her arms above her head while having intercourse with her). The force used by the defendant also must have been "greater than or qualitatively different from the simple movement and contact that is inherent in the action of touching an intimate part of another." *Marshall*, 350 Or at 227.

In addition to needing to prove that the perpetrator used enough physical force to overcome the victim's will—however much force that might have been under the particular circumstances—the state also must prove a causal relationship between the defendant's use of physical force and the victim's submission to or engagement in the sexual contact. *Id.* at 217. In *Marshall*, the state argued against a causation requirement, asserting "that first-degree sexual abuse can be proved by showing an act of physical compulsion that was part of the circumstances surrounding

---

[6] The "earnest resistance" requirement was removed due to its deleterious effects on victims of sexual assault. *Marshall*, 350 Or at 223 (describing the legislative history of the 1999 amendment, including that it was "promoted by a group of rape victim advocates and district attorneys, who argued that the requirement of proving earnest resistance was unfair to, and actually could endanger, victims of sexual assault").

the particular sexual contact at issue, without regard to whether the act of compulsion had any causal relationship to the sexual contact." *Id.* at 216. The Supreme Court disagreed, expressly concluding that ORS 163.427 requires a causal relationship between the defendant's use of physical force and the victim's submission to or engagement in the sexual contact. *Id*. at 217-18. It is not enough that "the sexual contact be *accompanied by* some degree of forcible compulsion," *id.* at 216 (emphasis in original), or that the "totality of the circumstances" included some act of forcible compulsion, *id.* at 214-15. The use of physical force must *cause* the victim to submit to or engage in the sexual contact. *Id.* at 218.[7]

Turning to the facts of this case, we reiterate that this is a difficult case, but we ultimately agree with defendant that the evidence was insufficient to establish forcible compulsion by physical force based on defendant's grabbing of the victim's hips.

When defendant approached the victim in the restroom, he could have grabbed her breasts directly. Instead, he grabbed her hips, released them, and then grabbed her breasts. Although the two contacts occurred in close succession, they did not occur simultaneously, and the first was not a necessary predicate to the second. As such, this case directly implicates the causation issue addressed in *Marshall*.

In *Marshall,* the Supreme Court explained that, when a person engages in multiple nonconsensual contacts with a victim, the fact that the person used physical force in connection with one of the contacts is not enough to establish forcible compulsion by physical force as to all subsequent contacts. *Id.* at 219. Rather, the state must prove a causal relationship as to each contact.

"[C]ontrary to the state's argument, a single act of forcible compulsion that accompanies multiple acts of sexual contact does not necessarily transform each of those sexual

---

[7] Of course, a single threat or a single act of physical force may compel a victim to submit to or engage in multiple sexual contacts. *Marshall*, 350 Or at 219. For example, a person could threaten to kill someone unless she engages in both oral sex and sexual intercourse, or a person could hold someone down while he engages in both sexual intercourse and sodomy.

contacts into separate instances of first-degree sexual abuse. Instead, for each of the sexual contacts that the state charges, the state must rely on an act of 'forcible compulsion' that bears some causal relationship to the sexual contact: It must, in some sense, result in that *particular* sexual contact."

*Id*. (emphasis in original).

Applying that principle in *Marshall*, where the defendant had been convicted of two counts of first-degree sexual abuse based on two sexual contacts with the same victim during the same criminal episode, the Supreme Court concluded that there was sufficient evidence of forcible compulsion for that issue to go to the jury on the first charge, but not on the second charge. *Id*. at 227. The first count was based on the defendant having forced the young victim's hand down his pants to make her touch his penis, while the second count was based on the defendant having grabbed the victim's buttocks. *Id*. Although the defendant's use of physical force to force the victim's hand down his pants was sufficient to establish forcible compulsion for the first count, it was insufficient to establish forcible compulsion for the second count. *Id*. That is, even though the defendant grabbed the victim's buttocks *after* he had used physical force against her, there was insufficient evidence of a causal relationship between the two events, and so the trial court erred in not granting the defendant's motion for judgment of acquittal on the second count. *Id*.

In this case, the defendant's first nonconsensual contact with the victim—grabbing her hips—was not charged as an act of sexual abuse, whether as a matter of prosecutorial discretion or because the state did not believe that it could prove that that was "sexual contact." *See* ORS 163.305(6) (defining "sexual contact" as including "any touching of the sexual or other intimate parts of a person *** for the purpose of arousing or gratifying the sexual desire of either party"); *State v. Woodley*, 306 Or 458, 463, 760 P2d 884 (1988) (recognizing that what constitutes an "intimate part" is largely subjective). That procedural wrinkle complicates the forcible-compulsion analysis, in that it raises the issue whether the first contact should be treated as nonconsensual *sexual* contact or just nonconsensual *physical*

contact. The distinction is potentially relevant, because sexual contact that involves only the amount of force necessary for the sexual contact itself is not an act of "physical force" constituting forcible compulsion. *Marshall*, 350 Or at 227. Thus, in normal circumstances, if a person subjected a victim to two different nonconsensual sexual contacts in immediate succession—such as touching two different body parts—the first contact would simply be its own act of sexual abuse and would not constitute "physical force" for purposes of the second contact.

Ultimately, however, we conclude that the distinction is one without a difference as far as the outcome of this case. Whether defendant's grabbing of the victim's hips is viewed as nonconsensual sexual contact or just nonconsensual physical contact, the fact remains that defendant engaged in two nonconsensual contacts with the victim that were separate and distinct in nature, albeit close together in time. Even assuming that the hip-grabbing qualified as an act of physical force (rather than another sexual contact), the trial court's forcible-compulsion ruling depends on an overly broad view of causation that is inconsistent with the statute.

In concluding that there was sufficient evidence of forcible compulsion, the trial court wrongly focused on whether the victim reasonably felt afraid and coerced during her encounter with defendant. Any victim of nonconsensual sexual contact may reasonably feel afraid and coerced, precisely because the contact is *nonconsensual*. *See Marshall*, 350 Or at 218-19 (trial court erred in relying on evidence that the victim did not want the contact as evidence of forcible compulsion). Nonconsensual sexual contact is criminal regardless of whether it involves forcible compulsion. *See* ORS 163.415(1) (subjecting another person to sexual contact without the person's consent is third-degree sexual abuse). Forcible compulsion is an additional factor in some sexual abuse cases, but the absence of forcible compulsion does not mean that the victim was not afraid or that the victim was a willing participant in the sexual abuse. The absence of evidence of forcible compulsion means only that the defendant did not engage in a particular use of physical force or make a particular type of threat as part of the crime.

On appeal, the state presents a somewhat different theory of forcible compulsion than the trial court relied on. The state argues that there was sufficient evidence of a causal relationship between defendant's grabbing of the victim's hips and the victim's submission to the grabbing of her breasts, because the victim testified that, as soon as defendant got so close to her (less than six inches away), she would have run out of the restroom if he had not put his hands on her hips. But, because the victim was so shocked by defendant grabbing her hips, she hesitated before fleeing the restroom, which allowed time for defendant to grab her breasts.

There is a logical flaw in the state's argument, in that defendant did not need to grab the victim's hips to keep her there long enough to grab her breasts—he could have just grabbed her breasts directly. Putting that aside, the state's view of causation is impermissibly broader than that contemplated by *Marshall*.

Any type of unwanted touching is potentially shocking and may cause a person to freeze as he or she considers how best to negotiate the situation and get out of it. But, relevant to forcible compulsion, the question, properly, is not whether an act of unwanted touching gave the victim pause and therefore created a window of opportunity for the defendant to engage in a different act of unwanted touching. The question is whether the defendant's use of physical force was such that it caused the victim to *submit* to or engage in sexual contact. *Marshall*, 350 Or at 217-18 (what must be compelled is the victim's submission to or engagement in the sexual contact); *see, e.g.*, *State v. Digesti*, 267 Or App 516, 517-18, 522-23, 340 P3d 762 (2014) (there was sufficient evidence to go to the jury on forcible compulsion, where the 48-year-old defendant used his foot to block the door and physically struggled with the 15-year-old victim while he sexually groped her and she tried unsuccessfully to escape).

Consider a simplified hypothetical. If a person approached another person, touched her hand and made eye contact, and then put his hands on her breasts, the victim might well not run away until the unlawful sexual contact, no matter how alarmed she was by the initial touch. For a

variety of reasons, it simply takes time to react in a confusing situation. But that does not make the touching of the victim's hand an act of physical force that compelled the victim to submit to sexual contact for purposes of first-degree sexual abuse. The unwanted touching of the hand might have had the practical effect of delaying the victim's reaction to flee, but the touching of the hand alone would not be enough to establish that the perpetrator used physical force to compel the victim to submit to the sexual abuse. That is, there is a difference between being startled by physical contact into a slightly delayed reaction and being forcibly compelled by physical force to submit to or engage in sexual contact. Both situations involve crimes, but only the latter involves first-degree sexual abuse by forcible compulsion by physical force.

Here, the victim never suggested that she felt compelled to submit to defendant touching her breasts because defendant had previously grabbed her hips. To the contrary, the victim fled the restroom as soon as defendant touched her breasts. When defendant grabbed the victim's hips, she was "just so in shock" that she did not run out of the restroom immediately. But, when he grabbed her breasts, she overcame the shock and immediately turned, opened the door, and ran away. On that record, there is no evidence that the victim felt compelled to submit to the grabbing of her breasts because of defendant's earlier grabbing of her hips. The possibility that she might have *left the restroom sooner* if defendant had not shocked her by making physical contact with her is not sufficient to establish causation for forcible compulsion.

"[T]o prove that a particular sexual contact was first-degree sexual abuse, the state must prove not only that the defendant subjected the victim to an act of forcible compulsion, but also that that act resulted in the sexual contact that is the focus of the charge, *in the sense that it compelled the victim to submit to or engage in the contact.*" *Marshall*, 350 Or at 227 (emphasis added). Here, the evidence was insufficient to establish that the victim felt *compelled* to *submit* to the grabbing of her breasts *because* defendant grabbed her hips. That two separate offensive touches occurred in

immediate succession is not enough to prove forcible compulsion by physical force.

Finally, the state's argument on appeal could be read to suggest that, even if the evidence was insufficient to establish forcible compulsion by threat and insufficient to establish forcible compulsion by physical force, defendant could still be convicted of first-degree sexual abuse because the "element of surprise," defendant's gesture, and the hip-grabbing combined to prolong the encounter. To the extent that the state means to make that argument, we reject it as inconsistent with the statute. Although jury concurrence is not required as to the type of compulsion used, *State v. Sullivan*, 253 Or App 103, 107-08, 288 P3d 1004 (2012), *rev den*, 354 Or 814 (2014), the statute requires a qualifying act of physical force or a qualifying threat. ORS 163.305(1) ("'Forcible compulsion' means to compel by: (a) Physical force; or (b) A threat [of the specified type]."). In this case, the evidence was insufficient to establish either.

## CONCLUSION

The trial court erred in denying defendant's motion for judgment of acquittal on the charge of sexual abuse in the first degree, ORS 163.427. As both defendant and the state agree, the proper remedy is to reverse and remand with instructions for the trial court to enter a conviction for third-degree sexual abuse, ORS 163.415, instead of first-degree sexual abuse, ORS 163.427, and for resentencing. *See State v. Pittman*, 276 Or App 491, 495, 369 P3d 99 (2016) ("We have authority under the Oregon Constitution to direct entry of a lesser-included offense that we determine should have been entered by the trial court.").

Reversed and remanded with instructions to enter judgment of conviction for third-degree sexual abuse and for resentencing.