Argued and submitted April 29, 2014, affirmed August 26, petition for review denied December 10, 2015 (358 Or 449)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JUIDD W. MILES,
aka Judd W. Miles,
*Defendant-Appellant.*

Deschutes County Circuit Court
11FE0825; A151733

357 P3d 522

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Susan Fair Drake, Deputy Public Defender, Office of Public Defense Services.

Joanna Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F.

Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant was convicted of first-degree sexual abuse, ORS 163.427, and second-degree criminal trespass, ORS 164.245. On appeal, he challenges his sexual abuse conviction, raising three assignments of error. We reject the third without discussion and write to address the first two. In his first assignment, defendant contends that the trial court erred when it denied his motion for a judgment of acquittal. He argues that the evidence was insufficient to support his sexual abuse conviction because the three-year-old victim was too young to have a subjective belief that her hips and legs were "intimate parts," an element of what constitutes "sexual contact" as determined in *State v. Woodley*, 306 Or 458, 760 P2d 884 (1988). In his second assignment, related to his first, defendant argues that the trial court erred when it excluded defendant's proffered expert testimony regarding the capacity of three-year-old children for understanding intimacy and intimate parts. We conclude that there was evidence sufficient to support the conclusion that the victim had the necessary subjective belief and that the trial court did not err in excluding the proffered expert testimony. Accordingly, we affirm defendant's sexual abuse conviction.

"We view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found that the state proved the essential elements of the crime beyond a reasonable doubt." *State v. Turley*, 202 Or App 40, 48, 120 P3d 1229 (2005), *rev den*, 340 Or 157 (2006) (citing *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998)). So viewed, the facts are as follows.

The incident occurred when the victim, C, was three years old. Her father, Dixon, left her in a room in their house watching a cartoon. She was wearing a two-piece bathing suit. Dixon came back into the room to check on his daughter two or three minutes later, and she was no longer there. He walked into the backyard through a door in the room, came around the corner of the house, and saw defendant kneeling in front of C. Defendant, a complete stranger to C and her family, had been riding his bicycle in the alley behind the

house and had seen C in the backyard and stopped. Dixon saw defendant's hands touching the side of C's legs and holding the bottom of her bathing suit, which had been pulled down just above her knees. (The state posits, and defendant assumes for purposes of the appeal, that, because defendant pulled C's swimsuit down, he touched C's hips.) When Dixon discovered him, defendant let go of C and began to run. When Dixon chased after defendant, C pulled up her pants and went inside the house. Dixon tackled defendant, restrained him, and instructed Arthur, C's mother, to call the police. At the time of the incident, C was potty-trained and only pulled down her pants in order to use the toilet. She was not in the habit of pulling her pants down in public; Arthur and Dixon taught her that doing so was "not right." Indeed, Arthur testified that she and Dixon had taught C that exposing her "private places" or where her bathing suit covers, is "sicko."[1]

Defendant sought to have a child psychologist, Dr. Dragovich, testify "regarding child development and whether a three-year-old understands the concept of intimacy which was outlined by the State and is described in [*State v. Meyrovich*, 204 Or App 385, 129 P3d 729, *rev den*, 340 Or 673 (2006)] on page 391 where it describes the type of relationship, perhaps, that would exist to be—and in those relationships where the person would only let that type of person touch that part." The proposed testimony, according to defendant, would assist the jury, under OEC 702,[2] to understand that C could not regard the areas that defendant had touched as "intimate parts," and, thus, did

---

[1] On direct examination, mother was asked:

"Had you ever talked to her about her privates being private or, you know, where her bathing suit covers, or any of those conversations about private places?"

She answered:

"Well, we used the term 'sicko.' You know, don't be—that's a sicko when you, you know, when you show your private part, or, you know, we told her that it's not—it's not appropriate to be doing that."

[2] OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

not satisfy the subjective part of the test in *Woodley*, 306 Or at 463, set forth by the Oregon Supreme Court to determine what constituted "sexual contact" by touching "other intimate parts."[3] ORS 163.305(6). The term "intimate parts" is not defined in ORS 163.305(6).[4]

Following that offer of proof, the trial court declined to admit the testimony, offering this explanation:

"Well, I think the crux of the issue obviously has to do with is what issues can experts testify to, and there's some very obvious areas that experts can testify to.

"But this isn't just an issue of whether or not the expert testimony may help the jury make a decision. It is the issue of whether or not an expert can testify as to a mental state; whether or not an expert can say, 'Based on my training and expertise, this is what's going on in this child's head, and so she could not have considered certain areas to be an intimate part or not an intimate part.'

"I don't think that's permissible. I don't think it's permissible if the State were attempting to do that in proving some level of mental state required in the crime, and I don't think it comes back the other way around.

"* * * * *

"Ultimately, it's the jury's domain to determine whether or not this, within society, that that is considered an intimate part.

---

[3] ORS 163.427 provides, in part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age; [or]

"(B) The victim is subjected to forcible compulsion by the actor[.]"

"Sexual contact" is defined in ORS 163.305(6) as

"any touching of the *sexual or other intimate parts* of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

(Emphasis added.)

[4] The Supreme Court has explained that only breasts are "intimate parts" as a matter of law, and that otherwise it is for the jury to determine whether the touching at issue involved an intimate part. *See Woodley*, 306 Or at 463 ("[T]he court may not, in a criminal case, instruct the jury that any part is objectively 'intimate,' other than breasts.").

"The first part of that test which is specifically referenced as subjective, the first part of that test, the state has to prove that as well, regarding subjective, and the state can do that with circumstantial evidence, with indirect evidence.

"But I do not believe that expert testimony is appropriate when it deals with a subjective state of mind in determining what a person's subjective state of mind is.

"So I'm not going to allow expert testimony on that issue."

After the jury deliberated, the trial court allowed defendant to make a further offer of proof as to what Dragovich's testimony would have been. Dragovich, who had neither met nor interviewed C, testified to a three-year-old's ability to form a conception of "intimacy." The testimony primarily consisted of her opinion that a normal three-year-old does not regard various parts of her body as intimate because, at that age, her language development is limited. When asked whether a three-year-old normally views various parts of his or her body as intimate, Dragovich responded:

"No, in terms of language development that starts later in the first year and continues to the second year and into the third year, at least in terms of basic intelligence testing of young children, they're mostly learning nouns, names of things. * * *

"So their language development is in terms of labeling, naming different things.

"And for three-year-olds, they have—well depending on how precocious or smart they are, they would have a couple of word sentences or a little bit longer, but they're still in a time of acquiring language to apply to different parts of their environment.

"And the idea of an intimate part, they wouldn't know what that was or think about that. It's part of later teachings that would come from parents and school and society but not at age three."

Dragovich added, when asked at what age children start to understand the concept of intimacy:

"In basic child protective education, I think when they are about age four or in preschool, they're introduced to the idea of bad-touch/bad-touch, secret touch; and secret touch refers to places on the body that are typically covered by a bathing suit.

"But children at that age don't understand the concept of intimacy. They're still getting labels for different body parts and they're getting information from the people teaching them, very basic kind of good-bad level.

"So that would be more like at age four * * * to five-ish where they're being taught about going from labeling a body part to function: What's the function of a body part? What does this body part do? What do you use this for."

And when defendant asked Dragovich if it matters that a parent had instructed their child to keep their clothes on, she replied that that concerned modesty or protection from the sun and that if you asked a three-year-old what the word "intimate" means, "You'd just get a blank stare."

Defendant's challenges to the trial court's denial of his motion for judgment of acquittal and to the exclusion of Dragovich's testimony concern the test set out in *Woodley*. 306 Or at 463. There, the defendant was convicted of attempted second-degree sexual abuse for "touching the thigh area and between [the victim's] breasts" without her consent. *Id*. at 460. The court reversed our decision, *State v. Woodley*, 88 Or App 493, 746 P2d 227 (1987), *rev'd*, 306 Or 458 (1988), in which we held that, as a matter of law, intimate areas do not include the thigh and between the breasts. We did so in the process of addressing an argument that the term "intimate parts" is unconstitutionally vague. *Id*. at 497. The Supreme Court concluded that it was not the intent of the legislature for us to be "deciding for [ourselves] whether parts of the body are or are not 'intimate' as a matter of law." *Woodley*, 306 Or at 462-63.[5]

---

[5] The court noted that the legislative history, in the form of commentary from the Criminal Law Revision Commission, indicated that "other intimate parts" included "'genitalia, breasts and whatever anatomical areas the trier of fact deems 'intimate' in the particular cases which arise. [T]he ultimate decision of 'intimate' parts [*sic*] is left to the community sense of decency, propriety and morality.'" *Woodley*, 306 Or at 462 (quoting Proposed Criminal Procedure Code, Final Draft and Report (July 1970), Commentary to § 116). The court stated that

To solve the problem of vagueness and to prevent the appellate courts from deciding as a matter of law which body parts are considered intimate, the court formulated a two-part test:

"First, because the object of the statute is to protect persons from unwanted intimacies, the part must be regarded as 'intimate' by the person touched. This is a subjective test.

"Second, if an accused touched this part knowing that the touched person regarded it as intimate and did not consent, the accused violates the statute if the requisite sexual purpose is proved. If the accused, regardless of his or her private purpose, did not know that the part was 'intimate' to the person touched, the state must prove beyond a reasonable doubt that the accused should have recognized it to be an 'intimate part.' The latter is an objective test."

*Id.* at 463. The court explained:

"In other words, the part must be subjectively intimate to the person touched, and either known by the accused to be so or to be an area of the anatomy that would be objectively known to be intimate by any reasonable person. A court may decide that no reasonable jury could find a particular part of the body to be objectively 'intimate,' but the court may not, in a criminal case, instruct the jury that any part is objectively 'intimate,' other than breasts."

*Id.*

We also addressed the issue of what is considered an "other intimate part" in *Meyrovich.* There, the trial court denied the defendant's motion for a judgment of acquittal on the basis that a neck is not "intimate." 204 Or App at 387. The defendant had gained access to the victim's dwelling and then forcibly kissed her on the neck, and argued that the second, objective, prong of *Woodley*—requiring that

---

"the first idea would let each factfinder define 'intimate part,' and the second would face all the problems of determining 'community' judgment as a disputable fact to be established beyond a reasonable doubt.

"Thus we can appreciate why the Court of Appeals, to save the statute from incoherence, turned to deciding for itself whether parts of the body are or are not 'intimate' as a matter of law. Whatever the commission and the legislature meant to do, however, they clearly decided not to do that."

*Id.* at 462-63 (citation omitted).

the defendant know that the victim regards the body part as intimate or should have recognized it to be an 'intimate part'—was not met. *Id.* We readily concluded that, because the victim testified that she "regarded defendant's actions in putting his mouth on her neck as touching an intimate part," the first, subjective, prong of *Woodley* was met. *Id.* at 390. We looked to the common meaning of "intimate"[6] and concluded that,

> "when the legislature used the term 'intimate part[]' in ORS 163.305(6), it intended to mean a body part that the person ordinarily allows to be touched only by other people with whom the person has an intimate relationship, that is, a 'very close personal relationship[]' marked by 'love, * * * ardent liking, * * * or mutual cherishing.'"

*Id.* at 391. Using that definition, we held that "a reasonable jury could find beyond a reasonable doubt that, when defendant put his mouth on the victim's neck, he knew or should have known that she considered it, under the circumstances, to be an 'intimate' part." *Id.*

As noted, defendant contends that the state's evidence was insufficient for the jury to find that C regarded her hips and legs as intimate parts. In defendant's view, Arthur's testimony—that C was not a child who would pull her pants down because C knew that "it's not right to be pulling your pants down outside or in public" and that Arthur had had talks with C that it was not appropriate "to show your private part," and that it is "sicko" to do so—does not establish that the victim subjectively "believed that any body part, covered by her swimming suit or not, was 'intimate.'" Rather, according to defendant, Arthur's testimony only demonstrated that

---

[6] We stated that "intimate" is relevantly defined in *Webster's Third New Int'l Dictionary* 1184 (unabridged ed 2002) as "'marked by or appropriate to very close personal relationships : marked by or befitting a relationship of love, warm or ardent liking, deep friendship, or mutual cherishing[.]'" *Meyrovich*, 204 Or App at 391 n 3. We identified the portion of the definition for "intimate" relevant to the facts of that case, which involved forcible compulsion against an adult. We omitted mention of an example given for that definition of "intimate"—"<always intimate relations between a mother and her young child—Edward Westermarck>"—as well as other relevant definitions, namely, "of, relating to, or befitting deeply personal (as emotional, familial, or sexual) matters or matters usually kept private or discreet," or "worn next to the skin <intimate underwear> : worn in the home <an intimate negligee>." *Webster's* at 1184.

C had been taught not to expose her "private parts" and did not establish that C understood that term to include anything other her crotch and buttocks, *i.e.*, C only regarded her crotch and buttocks as intimate parts, not her legs and hips. Thus, in defendant's view, the evidence could not establish that C considered her hips and legs to be intimate parts.

Defendant also contends that the fact that C pulled up her swimsuit bottom after her father discovered defendant with her is not sufficient evidence either because the victim exhibited "no signs of trauma or fear." Defendant points to *State v. Stacy*, 113 Or App 141, 830 P2d 624 (1992), in which a defendant was convicted of two counts of first-degree sexual abuse for touching the buttocks of two girls, aged seven and eleven, at a department store. In that case, in which we reviewed the trial court's denial of the defendant's motion for a judgment of acquittal, we concluded that the girls' surprised reactions—one described the contact as "yucky" and the other described her mental state as "quite excited, nervous and scared"—were sufficient evidence from which a rational trier of fact could have found that the victims subjectively considered their buttocks to be intimate body parts. *Id.* at 144. Defendant contends that, unlike the victims' surprised reactions in *Stacy*, the victim pulling up her pants in this case was not indicative of anything, but rather was made in response to her father telling her to go inside.

The state remonstrates that defendant's proffered definition of "intimate"—that C did not regard her hips and legs as "sexually intimate" parts of her body—is too narrow.[7]

---

[7] The state alternatively contends that *Woodley*'s requirement of subjective belief is inapplicable to victims who fall within the class of persons incapable of consent. That is, in *Woodley*, the determination of what constitutes "other intimate parts" involved an adult victim who was capable of consent. 306 Or at 460. The state points out that the legislature chose to make sexual abuse based on incapacity (as opposed to lack of consent) an aggravated offense when committed against a child under the age of 14 and yet those same victims would most likely lack the capacity to form a subjective understanding of "intimate" for purposes of ORS 163.305(6). *See* ORS 163.427(1)(a); ORS 163.415(1)(a). Accordingly, the state contends that it would undermine the purpose of the statute to construe it in such a way that the protection afforded to the most vulnerable victims is significantly reduced by virtue of the same incapacity that otherwise creates an aggravated offense, and posits that we should not impose the subjective component of *Woodley* in the context of age-related sex offenses. Given our conclusion in this case that legally sufficient evidence exists to satisfy the subjective component of the *Woodley* test, we need not address the state's arguments.

We agree. The victim's subjective belief must be that she regarded as "intimate" her hips and legs where defendant touched her with a sexual purpose. Here, we rely on our definition of "intimate" for purposes of "sexual contact," which is "a body part that the person ordinarily allows to be touched only by other people with whom the person has an intimate relationship, that is, a 'very close personal relationship[]' marked by 'love, * * *, ardent liking, * * * or mutual cherishing.'" *Meyrovich*, 204 Or App at 391. Accordingly, the subjective belief prong of *Woodley* is met here if C regarded her upper legs and hips as areas of her body that are ordinarily to be touched by those close to her, such as her parents.

To prove subjective belief, the state need not rely on the victim's testimony; it may rely on circumstantial evidence. *See State v. McCapes*, 139 Or App 426, 912 P2d 419, *rev den*, 324 Or 176 (1996) (circumstantial evidence that the defendant cross-dressed could be used to determine that he considered his breast an intimate part). The state adduced such evidence—that is, testimony by C's parents that she had been taught not to expose the area covered by her bathing suit bottoms and that C reacted after defendant was discovered by pulling up her bathing suit bottom—which, viewed in the light most favorable to the state, was sufficient for a jury to conclude that C considered the areas touched by defendant to be intimate parts. Moreover, so can the other evidence: that C had a habit of undressing inside and behind closed doors and that she had been potty trained. Consequently, the trial court did not err in denying defendant's motion for judgment of acquittal.

We turn to defendant's assignment of error challenging the trial court's exclusion of his expert's proposed opinion testimony regarding the ability of a three-year-old to understand the meaning of "intimate part" for purposes of the subjective part of the *Woodley* test. Under OEC 702, an expert's testimony is admissible where, "if believed, [it] will be of help or assistance to the jury." *State v. Stringer*, 292 Or 388, 391, 639 P2d 1264 (1982). We review the exclusion of expert testimony under OEC 702 for legal error and, if a correct application of law permits more than one outcome, for abuse of discretion. *State v. Nichols*, 252 Or App 114, 119, 284 P3d 1246 (2012).

On appeal, defendant argues that "the trial court appears to have excluded the testimony based on its legal conclusion that an expert could not testify about a person's state of mind" and that that conclusion was incorrect under *State v. Gherasim*, 329 Or 188, 985 P2d 1267 (1999), and *State v. Middleton*, 294 Or 427, 657 P2d 1215 (1983), two cases that applied OEC 702's requirement that testimony "will be of help or assistance to the jury."

In *Middleton*, the Supreme Court addressed the admissibility of expert testimony regarding whether the behavior of a sex abuse victim—a 14-year-old girl who recanted her allegation that her father had raped her—was typical of the behavior of child victims of familial sex abuse. 294 Or at 432. In addition to holding that the testimony was not an impermissible comment on the victim's credibility, the court held that such testimony would be helpful to the jury: "If a qualified expert offers to give testimony on whether the reaction of one child is similar to the reaction of most victims of familial child abuse, and if believed this would assist the jury in deciding whether a rape occurred, it may be admitted." *Id.* at 437. Likewise, in *Gherasim*, the court held that a psychiatrist's testimony concerning his diagnosis of dissociative amnesia would have been helpful to a jury in a case in which the victim of an assault had difficulty remembering the details of her attack. 329 Or at 198. That is, it would have been helpful to the jury to know that the victim's "condition affected her capacity to remember what had occurred on the night that she was assaulted." *Id.* (citing *Middleton*, 294 Or at 436).

We pause to note that the proffered testimony, both as explained during trial and as expressed in the further offer of proof made after the jury's deliberation, concerned whether a three-year-old understands the *concept* of intimacy. Dragovich explained that the inability of a three-year-old (or any child under the age of eight, for that matter) to understand the concept of intimacy depends on her language development, or lack thereof. Namely, she testified that children of that age cannot understand what the term intimacy means because they are "mostly learning nouns, names of things." According to her, the meaning of

"intimate" is incomprehensible to a three-year-old: If asked about what "intimate" means, the child would respond with a "blank stare."

On appeal, in arguing that the trial court correctly excluded Dragovich's testimony under OEC 702, the state does not advance the trial court's basis for the exclusion of the proffered evidence—that expert testimony is inappropriate if it concerns a person's subjective state of mind—but instead posits that Dragovich testified to standards of language development that are inapposite to what the subjective-belief prong of *Woodley* requires. That is, we understand the state's argument to be that defendant's challenge to the trial court's ruling fails because *Woodley* and *Meyrovich*, 204 Or App at 391, require a determination that C regarded her hips and thighs as an intimate part—"a body part that the person ordinarily allows to be touched only by other people with whom [she] has an intimate relationship"—which is a determination qualitatively distinct from the view expressed by Dragovich.

We agree with the state that Dragovich's testimony would not be of assistance to the jury for its task of finding whether C subjectively regarded her hips and legs as "intimate parts." Whether a child abstractly understands the concept of intimacy in terms of language acquisition is a different inquiry than the one required for assessing subjective belief as set out in *Woodley* and *Meyrovich*. What is required is a determination that the person regards parts of her body as those parts she allows to be touched only by those people with whom she has an intimate relationship; an "intimate" relationship is a very close relationship marked by love, ardent liking, or mutual cherishing. *Meyrovich*, 204 Or App at 391. Dragovich's testimony, however, did not address a three-year-old's capacity to understand that only those persons close to her, like a parent, could touch certain parts of her body. That understanding does not require the ability to conceptualize intimacy in the manner about which Dragovich opined. Put differently, Dragovich did not testify that a three-year-old does not have the capacity to distinguish strangers from those persons close to her or to regard parts of her body as off-limits to those persons not close to her. Dragovich's testimony did not provide information to

the jury that would assist it in determining whether C was developmentally able to believe that her hips and thighs were parts of her body that were not ordinarily allowed to be touched by strangers, and, accordingly, the court did not err in excluding it under OEC 702.

Returning to the cases cited by defendant, *Gherasim* and *Middleton*, we observe that the holdings in those cases support the proposition that an expert can testify to a person's mental state or motivations to the extent that the testimony is helpful to the jury. *See also State v. Hazlett*, 269 Or App 483, 495, 345 P3d 482 (2015) (although harmless, it was error for trial court to exclude testimony of pharmacologist regarding the "effect of drug-induced dementia on a person's ability to form intent"). Accordingly, the trial court's stated reasoning for excluding the proposed testimony— "I do not believe that expert testimony is appropriate when it deals with a subjective state of mind in determining what a person's subjective state of mind is"—appears to contain an incorrect statement of law.

Nevertheless, on appeal, the state asks us to affirm the trial court's ruling on a basis slightly different from the one the trial court articulated—*i.e.*, asserting that the trial court was "right for the wrong reason." *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). We affirm a trial court's ruling on a basis other than that on which the court relied only when, if "the question presented is not purely one of law, * * * the evidentiary record [is] sufficient to support the proffered alternative basis for affirmance." *Id.* at 659. That condition requires that (1) "the facts of record [are] sufficient to support the alternative basis for affirmance"; (2) "the trial court's ruling [is] consistent with the view of the evidence under the alternative basis for affirmance"; and (3) "the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." *Id.* at 659-60.[8]

___

[8] Two other conditions must be met: (1) "the decision of the lower court must be correct for a reason other than that upon which the lower court relied" and (2) "the reasons for the lower court's decision must be either (a) erroneous or (b) in the reviewing court's estimation, unnecessary in light of the of the alternative basis for affirmance." *Outdoor Media*, 331 Or at 660.

"In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."

*Id.* at 660 (emphasis in original).

In this case, defendant had ample opportunity to make an offer of proof regarding the testimony he sought to offer. Though the court's articulated basis for excluding the proffered testimony somewhat misstated the law, that did not affect defendant's proffer; the case law that defendant intended to address with the testimony was discussed by the parties and the court.

We conclude that under a correct reading of that case law, the proffered testimony would not have been helpful to the jury. Accordingly, the court's ruling excluding Dragovich's testimony was not in error. Moreover, the evidence was sufficient for a jury to find that C regarded her hips and legs as intimate parts, and, thus, the trial court did not err in denying defendant's motion for a judgment of acquittal. Consequently, we affirm defendant's first-degree sexual-abuse conviction.

Affirmed.